## Sartorious *v.* The State, 24 Miss. Rep., 602.

### Receiving Stolen Goods.

The misconduct of a witness for the state in answering an illegal question, put by the state, after it had been objected to by the accused, when the answer is promptly ruled out by the court, is no ground for a new trial; unless it were distinctly shown that the answer thus made had a sinister influence on the verdict of the jury.

Witnesses who have been ordered by the court to withdraw from the court-room during the examination of witnesses, but who still continued present and heard the examination, will not ordinarily be examined. But it rests in the sound discretion of the judge whether they shall be examined or not. The safest rule seems to be not to reject such evidence altogether, but to admit it, subject to such remarks as the circumstances may warrant.

The party examining a witness in chief should interrogate him as to all material matters in the first instance; if he omits a material question it cannot be put on examination in reply. New questions unconnected with the subject of the cross-examination, or which do not tend to explain it, cannot be put in reply. Such is the general rule, but it rests in the sound discretion of the court, to determine whether the facts of a particular case, do or do not warrant a departure from it. This court will interfere with the exercise of this discretion, only in cases where the injury arising from a departure from the rule is manifest and great.

On a trial for receiving goods, knowing them to be stolen, it is error to charge the jury "that the discovery of the goods in the possession of the defendant, (they having been proved to be stolen,) shortly after they were missed, and the denial by the defendant that he had any such goods in his possession, is presumptive evidence

that he received them, knowing them to be stolen." It assumes as a fact proved, that the goods alleged to have been bought by the prisoner, were stolen. It was in effect, a charge upon the weight of testimony. Besides, the presumption arising from the facts would be that the accused had stolen the goods himself, and not that he had received them knowing they had been stolen.

It was error to charge the jury that "if they believed from the evidence, that the articles were purchased under their value, it is a presumption of the guilty knowledge of the defendant." The rule embraced in this instruction is too broad and comprehensive, and is indefensible upon reason or authority.

The denial of a party, having in his possession stolen goods, that he has such goods in his possession, is presumptive proof of his guilty knowledge; but if it be shown that such denial of possession was the consequence of misunderstandings, such denial ceases to raise a presumption of guilt.

A party must plead to the indictment before he can be put upon his trial, and such plea must be shown by the record.

Error to Hinds circuit court.   BARNETT, J.

At the October term, 1849, of Warren county, the plaintiff in error was indicted for buying certain stolen articles, being copper pipe worth $15, a stop-cock worth $10, three brass boxes worth $15, and pieces of casting worth $10, knowing them to be stolen. He was tried at the April term, 1850, and the jury returned a verdict of "guilty," which verdict was set aside, a new trial granted, and the venue changed to Hinds county.

At the May term, 1850, of the Hinds county circuit court, he was again tried; and, the jury being unable to agree, were discharged by consent.

The plaintiff in error was again put upon his trial, at the September term, 1851, and found guilty. The motion for a new trial was overruled, and the bill of exceptions thereto embodied the testimony in the case, the exceptions taken during the progress of the trial, and the instructions of the court.

S. Zimmerman, for the state, proved that he went to the store of defendant about the first of July, 1849, to search for articles missed from the foundry of Messrs. Peck & Redding; that Peck accused the prisoner of having seen them in his possession, which prisoner denied; and that, after searching the premises, the articles were found in the defendant's store-room, packed in a barrel. The witness identified the articles as the property of Peck & Redding; he had handled them often, and they were in his charge at the time they were taken, and they were taken without his knowledge or consent. He proved the

articles to have been worth about the amounts charged in the indictment. Peck was very much excited at the time he questioned the prisoner; an officer named Casey was present, who told prisoner he had a search warrant; prisoner is a foreigner, but speaks English well enough to be understood, and understands what is said to him.

The district attorney asked this witness, if he " knew of other stolen goods having been found on the premises of the prisoner ?" to which question the defendant's counsel objected, and, while the objection was being made, the witness answered, " Yes, to my sorrow," in opposition to the remonstrances of counsel. The court immediately instructed the jury not to regard this answer of witness. At the time the articles were found, the prisoner said he purchased them from a white man, some days before the search.

Lockwood and Peale, for the state, proved substantially the same that was proved by Zimmerman.

Samuel Rothschild and John Bracy, for defendant, proved that they were in the employ of the defendant; that they were present when the articles alleged by the state to have been stolen, were bought by defendant; that he bought them from a white man; that they saw him receive and pay for them, and take a receipt; that he gave about thirty dollars for them. Defendant dealt in such articles; they were brought to his store in the day time, on a dray, in baskets and barrels. They knew them to be the same articles that were found on defendant's premises, because there were none other in the house when these were bought from the white man, and they had assisted to pack them in the barrels in which they were found. These, together with several other witnesses, proved that the prisoner was a foreigner, and understood the English language very imperfectly. The state then offered to re-examine Zimmerman and Lockwood, who had remained in the court-room, and heard the testimony of defendant's witnesses, though they had been placed under the rule, and ordered to remain out of hearing. Defendant objected to their being examined; the objection was overruled, and exception taken; witness Zimmerman then proceeded to state, that, on the trial before the committing court, the prisoner

had said, that he had bought the articles from two white men; when defendant was charged with having the stopcock, he denied it, and said, " he had nothing of Peck's in his store."

The district attorney asked the witness how he happened to go to the store of defendant to look for the stolen articles, when he was proceeding to state what a negro had confessed, when he was interrupted by the counsel for the defendant, and instructed by the court not to tell any thing the negro told him. But the witness persisted in going on, and said, " that he had gone there because a negro had confessed that he had stolen the articles, and sold them to the prisoner."

The court immediately instructed the jury to disregard this statement.

Lockwood, on his re-examination, stated that Peck had told him that his stopcock was stolen, and he had reason to believe, was at the store of the defendant. The counsel for the defendant objected to this testimony, and the objection was overruled.

The errors assigned were—1st. The record does not show that the defendant was arraigned, or pleaded to the indictment. 2d. The evidence is against the verdict. 3d. The court below should have granted a new trial, on account of the statement improperly made by witness Zimmerman to the jury, of what a negro had told him; and also on account of his statement, that other stolen goods had been found in the possession of the defendant. 4th. The court erred in allowing witness Lockwood to testify as to what Peck had told him. 5th. The court erred in giving the 1st, 2d, and 7th instructions, asked on the part of the state. 6th. The court erred in refusing to give the 7th, 11th and 14th instructions, asked on part of the defense. 7th. The court erred in allowing the state's witnesses, who had been placed under the rule, and who had failed to abide by it and stay out of the court-house, to be recalled and examined.

The charges given on the part of the state, and assigned as error, are—1st. That proof that the articles alleged in the indictment were bought by the defendant, knowing them to be stolen, may be made, as well by the circumstances in the case, as by direct testimony. 2d. The discovery of the goods in the pos-

session of the defendant shortly after they were missed, they having been proved to be stolen, and the denial of the defendant that he had any such goods in his possession, is presumptive evidence of the fact that he received them knowing them to be stolen. The 7th is, that if the jury believe from the evidence that the articles were purchased under their value, it is a presumption of the guilty knowledge of the defendant.

The instructions asked by the defendant, and refused by the court, are as follows :

7th. "The jury must take all the circumstances into consideration ; and even should they believe that the defendant denied the possession of the goods, yet if the jury believe that such denial was not the result of conscious guilt, but of misunderstanding, or apprehension of consequences, then such denial affords no evidence of guilty knowledge."

11th. "It is essential that the circumstances should, to a moral certainty, actually exclude every supposition but that of the guilt of the prisoner; and that the jury should be so fully convinced by the evidence, that they would be willing to act upon that conviction, in matters of the highest importance to their own interest."

14th. "Manifestations of warmth and zeal beyond what the occasion calls for, over-forwardness in testifying that which will benefit the party by whom he is called, are tests by which the jury may, with the other evidence in the case, estimate the true character of the witness, and the value of his testimony."

The record does not show that the prisoner was arraigned, or pleaded to the indictment.

*F. Anderson* for plaintiff in error.

The first error assigned is fatal, and entitles the prisoner to a new trial.

The second instruction given for the state, besides assuming to be true what was an essential point to be made out by the state, and charging the jury upon a matter of evidence, announces, as a rule of evidence, a proposition the reverse of true. The facts stated would not raise a presumption that the prisoner received the goods knowing them to be stolen, but that he stole them himself; and if the jury believed the prisoner guilty of

larceny, they were bound to acquit him of the charge in the
indictment.

The 7th instruction asked for the defense was good law, and
applicable to the case.    See Barbour's Cr. Pl., 173, 174; 1
Starkie, 448, 451; Roscoe Cr. Pl., 123.

*D. C. Glenn*, attorney general.

The court will not interfere with the verdict of the jury; the
facts are sufficient to sustain it.   Nelm's case, 13 S. & M., 500;
McCann's case, ib., 471.

The objections, if well founded, amount to mere irregularities.
The court below must possess some discretion, and this court will
not interfere unless that discretion is grossly abused.   Barbour's
Cr. L., 127.

The charges I will not discuss.   One or more are doubtful
law; and I leave to the court to approve or reject them.

SMITH, C. J.:

The plaintiff in error was tried and convicted in the circuit
court of Hinds county upon a charge of having purchased stolen
goods, the property of Redding & Peck, with a knowledge that
said goods were stolen.   A motion was made for a new trial,
which was overruled.   The bill of exceptions filed to the de-
cision of the court overruling said motion, contains the evidence
adduced on the trial, and sets out the exceptions taken by the
prisoner during the progress of the trial, and the instructions
which were granted or refused at the instance of the state or
the prisoner.

The exceptions brought to our attention in the argument are
numerous.   We shall, however, notice only such as are mainly
relied on, and which present questions of practical utility.

1. It is insisted, that a new trial should have been granted, in
consequence of the misconduct of a witness offered on the side
of the prosecution.

It appears that, on the examination in chief of the witness re-
ferred to, the district attorney asked him what induced them to
suspect that the prisoner had the stolen articles in his possession.
Objection was promptly made to the legality of this question;
but in defiance of the remonstrance of the prisoner's counsel,

and while the objection was being urged before the court, the witness proceeded to state, "that he had been informed by a negro man, who confessed that he had stolen the said articles, that he had sold them to the prisoner." The court immediately instructed the jury that the answer of the witness was not evidence, and that they should not regard it in making up their verdict.

This conduct of the witness was certainly very reprehensible, and should have been properly noticed by the court. But we do not think it was ground for a new trial. Certainly not unless it were distinctly shown that the statement thus made to the jury had a sinister influence upon their verdict. It is difficult to imagine in what method such fact, if it existed, could be proved; and hence, we are compelled, from the nature of the transaction, to regard the subject as committed exclusively to the discretion of the circuit court.

2. The jury having been empanelled and sworn, upon the motion of the district attorney, the witnesses in attendance, as well for the prisoner as the state, were ordered to withdraw from the the court-room. The evidence for the prisoner having closed, the district attorney proposed to examine a witness called for the prosecution, and who, with the rest, had been put under the rule, for the purpose of rebuttal. This witness, after his examination in chief, had remained in the court-room, and had heard the examination of the whole of the witnesses for the prisoner. His examination was objected to by the prisoner's counsel; but the objection was overruled, and the witness examined. This, it is insisted, was error.

The rule on this question appears to be settled. A witness who has been ordered to withdraw, but who continues in court in violation of the order, will not ordinarily be examined. It rests, however, in the sound discretion of the judge, whether such witness shall be examined or not.[1] "This (says Phillips)

[1] 1 Archbold Cr. Pr. & Pl., 574; Laughlin v. State, 18 Ohio R., 99; Parker v. McWilliams, 6 Bing., 683; 4 Moore & Payne, 483; Beamon v. Elice, 4 Carr. & Payne, 585; Rex. v. Colley, 11 Moody & Salk., 329; Woods v. Pheran, Peck, 371; 1 Greenl. Ev., 432; Chandler v. Horne, 1 M. & Rob., 423; State v. Brookshire, 2 Ala., 303; Atty. Gen. v. Bulpit, 9 Price, 4; 4 Moore & Payne, 480; Thomas v. David, 7 C. & P., 350; McLean v. State, 16 Ala., 672; Lee Anon. 1 Hill, 254, 256; State v. Sparrow, 3 Murphy, 487; Dyer v. Morris, 4 Mo., 214; Keath v. Wilson, 6 Mo., 435; Pleasant v. State, 15 Ark., 624; Horter v. State, 2 Carter, 435.

seems to be the safest and justest course, not to exclude his evidence altogether, but to admit it, subject to such remarks as the circumstances may warrant; for otherwise an innocent party, possibly both parties, might be made to suffer a serious injury from the carelessness of a witness, or perhaps from his ill designs or ill-will. A reluctant or hostile witness might thus accomplish his purpose and defeat the party." 2 Phil. Ev., 396, Hill and Cow., Ed.; 4 ib., 711, note 361.

In the State of North Carolina, according to the case of State v. Sparrow, the courts have not even the discretion to prevent the examination of a witness who has violated the order of the court to withdraw, and has remained and heard the testimony of the other witnesses. 3 N. Carolina R., 487.

3. Two of the witnesses for the prosecution, Lockwood and Zimmerman, on their examination in reply, were permitted by the court to testify as to the facts not strictly in rebuttal of the evidence adduced by the defendant, nor in explanation of the testimony in chief offered by the prosecution. This was objected to on the trial, and is now assigned as error.

On the examination in chief, the party calling a witness is bound at his peril to interrogate him as to all material matters in the first instance; and if any material question is omitted, it cannot be put upon the examination in reply. No new question can be put in reply, unconnected with the subject of the cross-examination, and which does not tend to explain it. This is the general rule, which courts of original jurisdiction have found it expedient to adopt. But it rests with them, in the exercise of a sound discretion, to determine whether the facts and circumstances of a particular case do not warrant a departure from it. Hence, an appellate court will never interfere with the exercise of this discretion, except, perhaps, in an extreme case, where the injustice caused by the departure from this rule is manifest and great. In permitting the re-examination of these witnesses as to facts not in reply or rebuttal, the court therefore exercised a discretionary authority; and it does not appear that any injustice was done. 4 Phil. Ev., p. 701, note 360.[1]

[1] 2 Brod. & Bing., 297; 2 Russ., 634; 1 Archbold Cr. Pr. & Pl. 579; People v. Mather, 4 Wend., 229; 1 Greenl. Ev., 431, 467; 2 Phill. Ev., 910, 878; Law v. Mer-

4. It is insisted that the court erred in giving several of the instructions applied for by the district attorney, and in denying others which were requested in behalf of the prisoner. The following instruction, which was the second one given for the prosecution, is amongst those to which objection is made, to wit: "The discovery of the goods in the possession of the defendant, (they having been proved to be stolen,) shortly after they were missed by Lockwood, and the denial by the defendant that he had any such goods in his possession, is presumptive evidence that he received them knowing them to be stolen."

There are two obvious objections to this instruction.

1st. It assumes as a fact proved, that the goods alleged to have been bought by the prisoner were stolen. The averment that the goods were stolen, was as necessary an ingredient in the offense charged as the allegation that the prisoner had purchased them with a knowledge of the theft. It was, in effect, a charge upon the weight of testimony, and a clear invasion upon the peculiar offices of a jury.

2d. It lays down an incorrect rule in regard to the presumption which would legally arise in the case assumed in the instruction. Generally, the fact that a party is found in the possession of stolen property recently after the commission of the larceny, is not a circumstance from which it can be legally inferred that the party found in possession received the property with a knowledge that it had been stolen. On the contrary, proof of such fact, connected with other circumstances, would be presumptive evidence that the party himself had committed the larceny. This is the presumption which would generally arise; but it is conceded that there might be cases where recent possession of stolen goods, united with other circumstances, would warrant the presumption of a felonious reception, and not of a larceny of the goods. And it was so held in the State of New York, in the case of The People v. Teal, 1 Wheeler's Cr. Ca., 199. But in the case assumed by the instruction, that is, admitting it to be proved that the prisoner, within a short time after the goods were stolen, was found in possession of

rills, 6 Wend., 268; 9 Cowen, 65; Weber v. Kingsland, 8 Bosw., 439; 2 Phill. Ev., note 570, 584; Beal v. Nichols, 2 Gray, 262; Commonwealth v. Wilson, 19 Barb. (N. Y.), 510.  [These are leading cases. ED.]

them, and that he denied having such goods in his possession, it is evident that the presumption would arise that the prisoner had committed the larceny, and not as charged by the court, that he had received them with a knowledge of the larceny.

The seventh instruction for the prosecution is also excepted to. It is as follows: " If the jury believe from the evidence that the articles were purchased under their value, it is a presumption of the guilty knowledge of the defendant."

The purchase of stolen goods by a party similarly charged, under circumstances calculated to awaken suspicion, and at a price greatly below their value, would, doubtless, constitute grounds of presumption that the party purchased with knowledge. The rule laid down by the instruction is too broad and comprehensive, and is indefensible upon reason or authority.

5. The following instruction was requested by the prisoner, and refused by the court, to wit: " The jury must take all the circumstances into consideration, and if they believe that the defendant denied the possession of the goods, yet if they believe that such denial was not the result of conscious guilt, but of misunderstanding or apprehension of consequences, then said denial is no evidence of guilty knowledge."

The denial of the party having in his possession stolen goods, that he has such goods in his possession, is holden to be presumptive proof of his guilty knowledge, for the obvious reason, that if he were ignorant of the larceny, and had come by the possession fairly, he could have no motive for concealment. When, therefore, it is shown that the denial of the possession was the consequence of misunderstandings, such denial ceases to be a presumptive proof of the guilt of the party charged. There was evidence before the jury that the prisoner was a foreigner, and that he spoke and understood the English language imperfectly. Hence, there was some probability that he might not have understood what articles he was charged with having in his possession. The instruction contained a plain proposition, the truth of which was indisputable, and was warranted by the facts in proof before the jury. It was error, therefore, in the court to refuse to give it.

6. The record does not show that the prisoner was arraigned, or

that he pleaded to the indictment. In trials for minor offenses, a formal arraignment in practice is generally dispensed with. In such cases, where the defendant has pleaded to the indictment, an arraignment will be presumed. But a party, before he can be put on his trial, must plead to the indictment. In civil proceedings, it is error to submit a cause to the jury without an issue in fact having been made up by parties. In prosecutions for offenses, it must be equally erroneous to put a party upon his trial unless he has taken issue upon the charge by pleading to the indictment.

Having determined to reverse the judgment for the errors above noticed, it has become unnecessary and improper to examine the question, whether the evidence adduced on the trial was sufficient to warrant the verdict of the jury.

Let the judgment be reversed, the prisoner remanded, and a new trial awarded in the court below.