STATE *vs.* JOHN BARR.

*Constitution; Information for Violation of Sec. 7 Art. 5 of—*
*Pleading—Evidence—What Necessary to Allege—Bail*
*Bond—Offering to Pay—Tender—Examination and*
*Commitment or Holding to Bail—Presumption*
*—Public Officer—Performance of Duty—*
*Plea in Abatement or to Jurisdiction—*
*Criminal Case; Plea necessary—*
*New Trial.*

1. Information for violation of *Section 7, Article 5, of the Constitution*. Form given.

2. It is not necessary to allege in the information what sum of money the defendant offered or promised to pay. It is sufficient if it follows the bail bond in that respect.

3. Testimony given upon which the defendant was adjudged guilty.

4. Although it is alleged in the information that a general election was held it is not essential that it be proved, because the Court will take judicial notice of the fact.

5. The defendant having been held to bail on charge of offering or promising to pay, etc., the information could charge no other offense than the one for which he was held to bail. But it might charge either the offering or the promising to pay.

6. The words—"If you will vote the Republican ticket I will pay you twenty dollars after the polls have closed," is an offer to pay the person. The Constitutional provision does not require an acceptance of the offer. The offer would be sufficient and complete if the proposition was immediately rejected. There is no tender needed to make an offer.

7. The preliminary proceeding of an "examination and commitment or holding to bail by a Judge or Justice of the Peace" is absolutely necessary to enable the Attorney General to file the information, but it is no part of the offense charged.

8. No direct proof was made at the trial that there had been an examination or waiver of it, but a bail bond signed by the defendant and his sureties, and in which he undertook to appear and answer the charge set forth in the bond, was put in evidence. *Held*, that the officer taking the bail bond would be presumed to have acted within the scope of his authority until the contrary appears. If there was no preliminary examination, or no waiver of such examination, the defendant could prove it.

9. The proper method of raising the question whether there was a preliminary examination would be by a plea in abatement or plea to the jurisdiction, or perhaps by motion to quash, before the trial, supported by affidavit.

10. Although the information alleges that there was a preliminary examination, an immaterial fact need not be proved as a distinct fact.

11. There can be no valid trial except upon an issue joined. It is absolutely necessary in a criminal case that a plea be entered. It satisfactorily appearing to the Court that neither before, nor during, nor since the trial, was there any plea of any kind either by the defendant or by his counsel, and no appeal having been taken, a new trial was granted.

*(April 8, 9, 14, 1909.)*

Judges SPRUANCE and BOYCE, sitting.

*Andrew C. Gray*, Attorney-General, and *Charles W. Whiley*, Deputy Attorney-General for the State.

*David J. Reinhardt* and *Daniel J. Layton, Jr.*, for the defendant.

Court of General Sessions, Sussex County, April Term, 1909.

INFORMATION FOR VIOLATION OF *Section 7, Article 5, of the Constitution of the State of Delaware.*

The information was in the following form, to-wit:—

"February Term 1909
"Sussex County ss.
"1. Andrew C. Gray, Attorney-General of the State of Delaware, now here in the Court of General Sessions of the State of Delaware, now sitting in and for the County aforesaid, at the February Term of said Court in the year of our Lord one thousand nine hundred and nine, information makes that John Barr, late of Georgetown Hundred in the County and State aforesaid, on the third day of November, in the year of our Lord one thousand nine hundred and eight, having been brought before William A. Warrington, one of the Justices of the Peace of the State of Dela-

ware in and for Georgetown Hundred, County of Sussex, after waiving hearing and examination, was held to bail by the said Justice of the Peace in the sum of five hundred dollars, for the appearance of the said John Barr at the present session of the said Court of General Sessions being now here holden in and for said County, to answer to the charge that he the said John Barr, in Sussex County aforesaid, on or about the third day of November, in the year of our Lord one thousand nine hundred and eight, did violate the provision of *Section 7 of Article 5 of the Constitution of the State of Delaware* by offering or promising to pay Jonathan P. Hall money, as an inducement, compensation or reward to influence his vote at the General Election of the State of Delaware, held in Georgetown Hundred, County and State aforesaid, on Tuesday the third day of November in the year of our Lord one thousand nine hundred and eight.

"And further, that the said John Barr late of Georgetown Hundred in the County of Sussex in the State aforesaid, on or about the third day of November, in the year of our Lord one thousand nine hundred and eight, with force and arms at the Hundred aforesaid, in the County aforesaid, did unlawfully offer to pay to a certain Jonathan P. Hall aforesaid, as a compensation, inducement or reward to influence the vote of him the said Jonathan P. Hall, at the General Election of the State of Delaware then to be held on Tuesday the third day of November in the year of our Lord one thousand nine hundred and eight, money, the said Jonathan P. Hall then and there being duly registered and qualified to vote as an elector at the said General Election held on the third day of November in the year of our Lord one thousand nine hundred and eight in Georgetown Hundred, being in the Ninth Representative District of Sussex County aforesaid, contrary to the provision of the Constitution of the State of Delaware in such case made and provided, and against the peace and dignity of the State.

"2. Andrew C. Gray, Attorney-General of the State of Delaware, now here in the Court of General Sessions of the State of Delaware, now sitting in and for the County aforesaid, at the

February Term of said Court in the year of our Lord one thousand nine hundred and nine, information makes that John Barr, late of Georgetown Hundred in the County and State aforesaid, on the third day of November in the year of our Lord one thousand nine hundred and eight, having been brought before William A. Warrington, one of the Justices of the Peace of the State of Delaware in and for Georgetown Hundred, County of Sussex, after waiving hearing and examination was held to bail by the Justice of the Peace in the sum of five hundred dollars, for the appearance of the said John Barr at the present session of said Court of General Sessions, being now here holden in and for said County, to answer to the charge that he the said John Barr in Sussex County aforesaid, on or about the third day of November in the year of our Lord one thousand nine hundred and eight, did violate the provision of *Section 7 of Article 5 of the Constitution of the State of Delaware* by offering or promising to pay to the said Jonathan P. Hall money, as a compensation, inducement or reward to influence his vote at the General Election of the State of Delaware then to be held on Tuesday the third day of November in the year of our Lord one thousand nine hundred and eight.

"And further, that the said John Barr, late of Georgetown Hundred in the County of Sussex in the State aforesaid, on or about the third day of November in the year of our Lord one thousand nine hundred and eight, with force and arms at the Hundred aforesaid, in the County aforesaid, did unlawfully promise to pay to a certain Jonathan P. Hall aforesaid, as a compensation, inducement or reward, to influence the vote of him, the said Jonathan P. Hall, at the General Election of the State of Delaware then to be held on Tuesday the third day of November in the year of our Lord one thousand nine hundred and eight, the said Jonathan P. Hall then and there being duly registered and qualified to vote as an elector at the said General Election held on the said third day of November in the year of our Lord one thousand nine hundred and eight in Georgetown Hundred aforesaid in the Ninth Representative District of Sussex County aforesaid, contrary to the provision of the Constitution of the

State of Delaware in such case made and provided, and against the peace and dignity of the State.

"ANDREW C. GRAY,

"*Attorney-General.*"

Counsel for defendant moved to quash the above information on the ground that it failed to allege in either count what sum of money the defendant offered, or promised, to pay Jonathan P. Hall, the prosecuting witness.

*Gray, Attorney-General,* contended that the information was sufficient, and that it followed the bail bond in that respect.

The motion to quash was refused.

At the trial the State proved by Jonathan P. Hall that he lived in Georgetown Hundred and was twenty-three years old; that he knew John Barr, the defendant, and saw him on the third day of November, 1908, the day of the General Election in this State. The witness further testified, in response to questions by the Attorney-General, as follows:

Q.  Where did you see John Barr?

A.  Out there by the Eagle Hotel woodshed, back of the Eagle Hotel. (Indicating out the Court room window).

Q.  Who was there beside you and John Barr?

A.  Ben Morris.

Q.  Just state any conversation that you had with John Barr, the defendant, at that time and place?

A.  Ben came to me and told me that Mr. Barr wanted to see me. I came up and was standing there talking to Mr. Barr, and Ben came up. He (meaning John Barr, the defendant) said he would give us twenty dollars apiece to vote the Republican ticket.

Q.  Who said this?

A.  John Barr.

Q.  This defendant?

A.  Yes sir.

Q.  What other conversation did you have with Mr. Barr at that time—did you have any conversation with him about voting, before Benjamin Morris came up?

A. No sir; he just asked me if I was going to vote, and I told him yes.

Q. After Benjamin Morris came up just tell everything that Barr said.

A. He said, "If you boys go in and vote a republican ticket, I will give you twenty dollars as soon as the polls close." I told him I would see him after a while.

Q. Twenty dollars in money?

A. Yes sir; that's what he said.

Q. What did you say?

A. Told him I would see him after a while.

Q. Did you and Morris leave him then?

A. Yes sir; I went home to dinner.

Q. Did you tell any one about this offer?

A. No sir; until Charles Holiday and Joe Green came up to my house after me.

Q. When they came after you did you go to a Justice of the Peace and swear out a warrant for John Barr's arrest?

A. I went to Mr. Richardson's office.

Q. Did you have any further conversation with Mr. Barr about this matter?

A. Not that day.

Q. Have you had any with him since?

A. No sir.

Q. Have you spoken to him since?

A. Yes sir; he spoke to me.

Q. Did he say anything about this case?

A. No sir.

Q. Barr was arrested on election day.

A. Yes sir.

Q. What time of day was this?

A. Getting close to dinner time; about eleven or eleven thirty.

Q. How long were you over there by the wood pile?

A. Not over five minutes, I don't suppose.

Q. Was any one else that you saw within hearing distance of you?

A. No sir.

*Benjamin B. Norris*, after testifying on behalf of the State that he lived in Georgetown and was a registered voter in Georgetown Hundred at the last election and saw John Barr, the defendant, on election day in company with Jonathan P. Hall, back of the Eagle Hotel close to the woodshed, between eleven and twelve o'clock, further testified in response to questions by the Attorney-General, as follows:

Q. Was Hall with him when you came up?

A. Yes sir.

Q. After you got there was anything said about the election by Barr—about voting?

A. Mr. Barr said if we would go vote the republican ticket he would give us twenty dollars apiece as soon as the polls closed.

Q. How long were you and Hall there with him?

A. I suppose about five or ten minutes.

Q. Did you and Hall leave him together?

A. Yes sir.

Q. Did you or Hall say anything to him when he made that offer of twenty dollars?

A. When he made this offer I was standing over on Mr. Houston's steps at the printing office and he nodded for me to come to him and I went to him, and he says, "If you will go get Mr. Hall I'll give you twenty dollars; and tell him if he will vote the republican ticket I'll give him twenty dollars." Mr. Hall went to him first and then I went up.

Q. That was between eleven and twelve on election day?

A. Yes sir.

*Walter W. Pepper*, another witness produced on behalf of the State, testified that he saw the preceding witnesses, Hall and Morris, and the defendant, Barr, together on election day, 1908, sometime between two and three o'clock "right over at the woodshed at the Eagle Hotel;" that he was not near enough

to hear anything that was said; that "they were standing to-
gether; Mr. Barr was in the centre, and Hall and Morris were on
each side of him."

The State then rested.

*Mr. Reinhardt:*—If your Honors please, at this stage I desire
to submit a motion for the discharge of this defendant under the
evidence as given.    One of the material allegations necessary for
the State to prove, is that there was a general election on the
third day of November, 1908, and there is no proof whatever in
this case that there was such an election in this State.

SPRUANCE, J.:—The Court will take judicial notice of the
fact that there was a general election last November in this
State.

(The defense consisted of a general denial of the State's testi-
money, and evidence was introduced tending to impeach said
testimony.)


*Mr. Reinhardt:*—The information contained two counts, and,
when the testimony on both sides was closed, the Attorney-
General dropped the second count of said information, leaving
only one count—the first—remaining:   Counsel for defendant
ask the Court to return a verdict of not guilty, for the following
reasons (among others), to-wit:

1.   That there is a material variance between the allegations
in the information and the proof in the cause, it being alleged in
the information that the defendant had a hearing and examina-
tion, and it not appearing by the evidence that such hearing and
examination were in fact had.

2.   It being alleged in the information that an examination
and hearing were held, it is incumbent on the State to prove said
allegation, as set forth in said information, in order that the
Attorney-General may file said information and in order that the
Court may entertain jurisdiction of the same.

6.   That the first count charges an offer to pay money, and
there is no proof whatever in this cause that the defendant made
any *offer* to pay any money or other valuable thing.

(At this point Court adjourned to Friday morning, April 9, 1909, at 10 o'clock, at which time argument upon the above prayers of defendant's counsel was heard, after which the Court rendered the following decision):

SPRUANCE, J.:—We may as well dispose of the sixth proposition now. Looking at the bail bond we see that this man was held to bail to the charge of offering or promising to pay, etc. It is admitted that this information could charge no other offense than an offense for which he was held to bail—that is agreed.

*Mr. Reinhardt:*—Yes sir.

SPRUANCE, J.:—But that the information might charge either the offering or the promising to pay—either the one or the other. This count, which is the only one remaining in the information, is this: It charges that he did unlawfully offer to pay, etc. The question is whether the evidence before us sustains that allegation. Various language was used, but the sum and substance of it was that the accused, Barr, said to Hall, "If you will vote the Republican ticket I will pay you twenty dollars after the polls have closed." The question is, is that an offer to pay him (Hall) money, and is there or can there be any doubt that it was an offer? What more could you have to constitute an offer than that? This constitutional provision does not require an acceptance of the offer. The offer would be sufficient if a man would say, "I will pay you twenty dollars if you will vote the Republican ticket," and the proposition was immediately rejected,—the offer would be complete. Certainly there is no tender needed to make an offer. The ordinary way of making an offer is not by a tender of the money, and we do not see any difficulty about this at all. We think that the evidence in the case sustains the allegations of the information, and that it is most clearly an offer to pay money, and we therefore overrule that objection.

The first and second objections relate to the same subject, viz.: the hearing and examination required before an information can be filed.

The proposal to change the method of trial in election cases

as first made in the Constitutional Convention did not provide for any preliminary proceedings before filing an information.

The Convention determined that it would not be safe to permit the Attorney-General to file an information of this kind without a preliminary examination which should in some degree be a substitute for the action of a grand jury, and it was therefore provided that prosecutions of this character should be "on information filed by the Attorney-General, after examination and committment or holding to bail by a Judge or Justice of the Peace."

This preliminary proceeding is absolutely necessary to enable the Attorney-General to file the information, but it is no part of the offense charged. In this case the information alleges that there was this preliminary examination. There is no direct proof that there was an examination or waiver of it, but there is a bail bond signed by the defendant and his sureties, in which he undertook to appear to answer the charge set forth in the bond. That bond has been put in evidence without objection. It does not refer to any examination or any of the preliminary steps. The question is, what is our duty, having that before us alone? Is there any reason why we should depart from the rule which is well established, that the action of a public officer is presumed to have been within the scope of his authority until the contrary appears? If there was no preliminary examination, or no waiver of such examination, the defendant might have proved it, but this was not done. The Justice of the Peace had no right to take that bail bond without a preliminary examination or a waiver of it. Are we to infer that he took it outside of his jurisdiction, without a preliminary examination? We must infer that whatever was necessary as a preliminary to taking that bond, was done; the taking the bond being the act of a public officer, we will not presume that he violated his oath and took it without a preliminary examination. The proper method of raising the question whether there was a preliminary examination would be by a plea in abatement or plea to the jurisdiction, setting forth that there was no such preliminary examination or waiver of it,

and therefore the Attorney-General had no right to file the information, or perhaps by motion to quash, before the trial, supported by affidavit.    We do not think that the pending motion is the proper way to raise this question.

The information alleges that there was a preliminary examination, but our courts have held that an immaterial allegation need not be proved as a distinct fact.    For these reasons we are of the opinion that neither the first nor the second objection of the defendant can be sustained at this time, and we overrule them both.

(Whereupon the Court announced its verdict to be that it found the defendant guilty.)

*Mr. Reinhardt:*—I wish to give notice of an appeal.

SPRUANCE, J.:—We will defer the sentence until next Wednesday, April 14, 1909, and that will give you the opportunity to prepare your bond.

(On Wednesday, April 14, 1909, *Mr. Reinhardt* of counsel for defendant, moved for a new trial and in arrest of judgment, for the following reasons, among others, to-wit):

1.   The verdict rendered in the trial of said cause is a nullity, and no valid judgment can be rendered thereon, since said defendant was never arraigned and was never called upon to plead in said cause, and never did enter a plea therein, either before or during the progress of the trial of said cause or at any other time.

2.   It does not appear from the record in said cause that said defendant was ever arraigned or was ever called upon to enter a plea in said cause, or ever did enter any plea therein, either before or during the progress of the trial of said cause, or at any other time.

3.   It does appear from the record in said cause that there was no issue joined in said cause, either by arraignment and plea or by the waiver of arraignment and plea, and therefore said trial was invalid, and said verdict rendered therein was a nullity, and no valid judgment can be rendered thereon.

SPRUANCE, J.:—As to the fact whether there was or was not any plea entered, is that admitted by the State?

*Mr. Whiley:*—Nothing is admitted by the State. Our answer is this: that they entered into the trial and that they have given notice of an appeal.

SPRUANCE, J.:—The question is whether there was in fact before this trial took place, a plea to the information?

*Mr. Whiley:*—The defendant was not around.

SPRUANCE, J.:—Was there a plea entered to this information before the trial, or at any time during the trial?

*Mr. Whiley:*—No, your Honor, I can't say there was.

BOYCE, J.:—The plea of not guilty was not entered?

*Mr. Whiley:*—The plea of not guilty was not entered.

SPRUANCE, J.:—Or any other plea?

*Mr. Whiley:*—Or any other plea.

*Mr. Reinhardt:*—And the record of the Clerk of the Peace shows that there was no arraignment or plea.

SPRUANCE, J.:—Mr. Wright, have you looked through your record from beginning to end?

*Mr. Wright:*—Yes sir; there was no plea.

SPRUANCE, J.:—Perhaps the Deputy Clerk of the Peace had better be sworn.

(Whereupon Elwood Wright, Deputy Clerk of the Peace for Sussex County, is sworn by Judge Spruance and examined by Mr. Reinhardt, as follows):

Q. Are you the Deputy Clerk of the Peace of Sussex County?

A. Yes sir.

Q. Have you made an examination of your docket in every place wherein the case of State against John Barr is set forth?

A. I have.

Q. From the filing of the information last January until the present time?

A. Yes sir; I have.

Q. State whether or not that record discloses any plea of any kind on the part of the defendant in that cause?

A. It does not.

Q.   Is there any entry of any arraignment of the defendant, John Barr?

A.   There is not.

By Judge SPRUANCE:

Q.   You have been in service in the Clerk of the Peace's office since this information was filed, have you?

A.   Yes sir.

Q.   From your recollection, can you state whether or not there was any plea of any kind entered by the defendant, Barr, in the case which the Court has tried?

A.   I am quite sure there was not, and if I had heard such a thing I would have entered it on the book.

*Mr. Reinhardt:*—I have been counsel for Mr. Barr from the time of the filing of the information, and I can state that neither my client nor myself for him has ever entered any plea on his behalf.

*Mr. Layton:*—I can state that in the absence of Mr. Reinhardt, neither singly nor together, have we ever entered any plea.

SPRUANCE, J.:—Our minds are very clear upon this subject. It is argued on behalf of the State that we ought not to entertain this motion at this time, because the defendant, after the verdict was rendered against him, gave notice of an appeal.   So he did, but he has not taken this appeal yet and judgment was suspended, we say very properly, because we did not, under the circumstances, think it was the proper thing to send a man to jail before he could have an opportunity to enter his appeal, and therefore we suspended this sentence until to-day, of which the State had full notice, and we expected the State to be represented here, if necessary, by the Attorney-General.

No appeal has been taken.   The first step in that direction has not been taken.   That was to be done to-day.   Now they come into Court and bring to our attention the fact that there was no plea in this case of any sort, either before or during the trial, nor since the trial for that matter, and we have heard the statement of counsel for the defendant that he did not discover that until after the trial was over.

*Mr. Reinhardt:*—I found it out at the noon recess of the first day.

SPRUANCE, J.:—We have the admission of the Attorney-General that there was no plea at any time.

*Mr. Whiley:*—The admission of the Attorney-General was that there was no formal plea.

SPRUANCE, J.:—We understand the Attorney-General to admit that neither before, nor during, nor since this trial, was there any plea of any kind either by this defendant or by his counsel.   And we have the testimony of the Deputy Clerk of the Peace that he has made a careful examination of the record and he finds no record of any plea of any kind.   We have, in addition to that, the statement that to the best of his recollection there was never any plea of any kind, and he further supplements it by the statement that he believes he would remember if there had been any plea, and the fact that there never was any plea we take, both by admission and by proof, to be established.

We are of the opinion that that was absolutely essential, that there could be no valid trial except upon an issue joined, and there was no issue joined in the way the law requires.   That being so, we feel that we would not be warranted in entering final judgment against this defendant, and we are of the opinion that a new trial should be granted, and it is so ordered.

The defendant was again placed on trial at the October Term, 1909, in and for Sussex County, before PENNEWILL, Chief Justice, and WOOLLEY and HASTINGS, Associate Judges.

The evidence adduced at said trial was substantially the same as at the first trial, except that a new witness was produced by the State, viz., William J. Wilson, who was unimpeached, and testified that he heard the conversation between the defendant and the prosecuting witnesses, Jonathan P. Hall and Benjamin B Morris, in Georgetown, near the Eagle Hotel, about twelve o'clock, on election day, November third, 1908, as follows: "I went over where Barr was talking with them, and I stopped right behind him, and I heard him say to Hall—I don't know whether he was talking to Morris or not—but he said,

'you go vote, and I will give you twenty dollars.' Hall and Morris then went off; and Mr. Barr being a neighbor of mine, I thought they would get him in trouble, and I touched him on the shoulder and said 'come here,' and he turned around and walked about three steps. I said 'you are going to get yourself in trouble; you come and leave them boys alone.' He said 'I am 21 years old,' and he said something else, but I cannot remember what the other words were at this time. That is all I know about it, and I wish I did not know that."

(When the testimony on both sides was completed, the Court held the matter under advisement over night, and upon the reconvening of the Court on the following morning, rendered the following judgment):

PENNEWILL, C. J.:—After a most careful consideration of the evidence in this case, we are unanimously of the opinion that the defendant should be convicted. And we are also unanimously of the opinion, and have so determined, that under all the facts and circumstances of the case as disclosed by the evidence, the payment of a fine of six hundred dollars, which we consider substantial, together with the costs of prosecution, which are heavy, would be a proper and adequate punishment and meet the demands of justice in this case.

We adjudge the defendant guilty and are prepared to impose the sentence indicated.