STATE OF DELAWARE V. TILFORD TRABBOLD.

(*September* 23, 1952.)

Tried before RICHARDS, P. J., without a jury.

*Louis J. Finger*, Deputy Attorney-General, for the State.

*David B. Coxe, Jr.*, for the Defendant.

Superior Court for New Castle County, 
No. 67, January Term, 1952.

RICHARDS, P. J.:

The defendant relies upon two grounds in his reasons filed for a new trial; the first ground being, that he was never arraigned and consequently the trial was invalid. The second relied upon is, that the State failed to prove that the defendant was acting in an official capacity within the terms of the statute in question at the time he performed the services upon which the charge of extortion is based.

It is admitted that the defendant was never arraigned, but he appeared as a witness in his defense, was sworn, denied the charge against him and testified as to the transaction which the State contends supports the charge for which he was indicted.

In support of his first contention the defendant relies upon the case of *State v. Barr*, decided by this Court in 1909 and reported in 7 Penn. 340, 79 A. 730. In that case the defendant was charged in the information with a violation of Section 7 of Article 5 of the Constitution, tried and convicted. The Court in granting a new trial because it appeared that the defendant was never arraigned had this to say: "We are of the opinion that that was absolutely essential, that there could be no valid trial except upon an issue joined, and there was no issue joined in the way the law requires". The report of the case does not show that the defendant was called to testify in his defense, or that he ever personally denied the charges which the witnesses for the State made against him. The only mention which said report makes of the defense is found in the following language: "The defense consisted of a general denial of the State's testimony, and evidence was introduced tending to impeach said testimony". An examination of the minutes of the trial kept by the Clerk of the Court fails to show that the defendant testified during the trial. *Court Record*, 1876, *Sussex County*, page 674. This record is in office of the Clerk of the Peace at Georgetown, Sussex County.

The distinction between the *Barr* case, *supra*, and the case now being considered is readily seen. As far as I have been able to learn from the report and record of the case, Barr never denied the charges against him or testified concerning what happened. In the present case, the defendant, Trabbold, denied the charge against him under oath on the witness stand and testified as to his version of what happened during the transaction in question. He had as full an opportunity to deny the charge as he would have had if he had been arraigned, and his right to appear in his own defense and be heard was not denied.

The purpose of an arraignment of one charged with a criminal offense is to establish the identity of the accused, inform him of the charge against him and give him an opportunity to plead. 14 *American Jurisprudence,* Page 934.

It is held to be essential to the conviction of a felony unless waived by the accused.

*Parkinson v. People,* 135 *Ill.* 401, 25 *N. E.* 764, 10 *L. R. A.* 91; *Burroughs v. State,* 94 *Neb.* 519, 143 *N. W.* 450, *Ann. Cas.* 1915C, 1070; *Sperry v. Commonwealth,* 9 *Leigh, Va.,* 623, 33 *Am. Dec.* 261; *State v. Drown,* 85 *Vt.* 233, 81 *A.* 641; *Commonwealth v. Hardy,* 2 *Mass.* 302; 14 *American Jurisprudence,* P. 940.

There is a difference of authority on the question of whether an arraignment is necessary when one is prosecuted for a misdemeanor. The Supreme Court of the United States in the case of *Crain v. United States,* 162 *U. S.* 625, 16 *S. Ct.* 952, 959, 40 *L. Ed.* 1097, held that, "due process of law requires that the accused plead, or be ordered to plead, or, in a proper case, that a plea of not guilty be filed for him, before his trial can rightfully proceed; and the record of his conviction should show distinctly, and not by inference merely, that every step involved in due process of law, and essential to a valid trial, was taken in the trial court".

The principle was also recognized in, *Douglas v. State,* 3 *Wis.* 820; *Grigg v. People,* 31 *Mich.* 471; *People v. Corbett,* 28 *Cal.* 328; *State v. Hughes,* 1 *Ala.* 655; *Sartorious v. State,* 24 *Miss.* 602; *Bowen v. State,* 108 *Ind.* 411, 9 *N. E.* 378; *Aylesworth v. People,* 65 *Ill.* 301; *Ray v. People,* 6 *Colo.* 231; *State v. Vanhook,* 88 *Mo.* 105.

There undoubtedly was a period in English history when objections of this character were given much more weight, due to the fact that the accused was not allowed as great a latitude in defending himself, or entitled to as many privileges as he has today.

This rule, which has been spoken of as the ancient rule, is looked upon as too severe by modern authorities and there has been a tendency for some time to make it less rigorous in the lesser grades of felonies and misdemeanors.

The Supreme Court of the United States in *Garland v. State of Washington*, 232 *U. S.* 642, 34 *S. Ct.* 456, 457, 58 *L. Ed.* 772, overruling *Crain v. United States, supra,* made this comment: "A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review". That the courts are entertaining this view today is shown by the following cases: *Ingham v. State,* 35 *Ohio App.* 311, 172 *N. E.* 401; *State v. Forner,* 75 *Kan.* 423, 89 *P.* 674; *Dutton v. State,* 123 *Md.* 373, 97 *A.* 417; *Frank v. State,* 142 *Ga.* 741, 83 *S. E.* 645, *L. R. A.* 1915D, 817; *State v. O'Kelley,* 258 *Mo.* 345, 167 *S. W.* 980, 52 *L. R. A., N. S.,* 1063; *People v. Bradner,* 107 *N. Y.* 1, 13 *N. E.* 87; *Hack v. State,* 141 *Wis.* 346, 124 *N. W.* 492, 45 *L. R. A., N. S.,* 664.

The record in this case not only clearly shows that the defendant had ample opportunity to deny the charge against him and defend himself, but having made no objection to the fact that he had not been arraigned, agreeing to proceed with the trial, appearing as a witness and denying the charge against him under oath, there is an implied waiver of the failure by the State to have him arraigned.

I cannot follow the ruling of this Court in the case of *State v. Barr* above referred to.

The second ground relied upon for a new trial, namely, that the State failed to prove that the defendant was acting in an official capacity within the terms of the statute upon which the indictment is based, requires a consideration of said statute and the evidence adduced at the trial.

Paragraph 5384 of the *Code of* 1935, which is the statute involved in this case, provides: "If any officer shall demand and receive for any official duty, or service, a fee not allowed by law, or a greater fee than is allowed by law, or shall demand and receive a fee for such duty, or service, before the same shall have been actually performed, except where otherwise expressly provided, unless such fee be voluntarily tendered, the person so offending shall be guilty of a misdemeanor".

It was brought out at the trial that Douglas King, of Philadelphia, came to Wilmington and went to the office of Magistrate Lemon to arrange for the collection of a check of Harvey Taylor, for $245, who lived in or near Cheswold, in Kent County. King was received at the office of Magistrate Lemon by one Ivey Sharp, who acted as secretary of the Magistrate, who took the check, told him it would be attended to and would cost him $40. After King made his complaint in the office of the Magistrate, Sharp filled out a warrant or paper of some character which he gave to defendant, a constable who served process issued by Magistrate Lemon. At the time Sharp gave said warrant or paper to the defendant he also gave him the check of Harvey Taylor, for $245, and told him that King wanted it collected. The defendant took the warrant or paper and check handed him by Sharp at the Magistrate's office, as was his custom in his official capacity as constable, to take warrants issued by Magistrate Lemon and after going to Cheswold on two different occasions collected the full amount of $245.

Subsequently, King came to the Magistrate's office about 6:30 in the evening and found the defendant there. When King asked him if he had collected the amount due on the Taylor check, the defendant replied that he had $245 for him. King then asked him what he owed him to which defendant replied $95. A discussion then took place between King and the defendant as to the amount to be paid him for his services, during which King offered him $35, $45, $55, and finally $65 which the defendant agreed to take. The defendant gave King the entire

amount of $245 who counted out $65 and gave it to him in payment of the amount which he agreed to accept for his services.

It is admitted that the defendant was a constable at the time he performed the service for King, but denied that he was acting in an official capacity. It is not charged that legal proceedings were started to collect the amount due on the Taylor check, but the indictment does charge that the defendant committed certain acts "while collecting for one Douglas King a debt due the said Douglas King pursuant to a complaint filed in the office of Francis Q. Lemon, a Justice of the Peace * * *".

The defendant's contention that the statute fixes the fee for the official acts of a constable is correct, but certainly a constable can perform an act of an official nature for which no fee is provided. The statute which is the basis of the indictment, was intended to apply to just such cases as this, where an officer performs an act in his official capacity and receives a fee therefor not allowed by law. The defendant first learned about the matter at the office of Magistrate Lemon, he received the warrant and Taylor check at the office of the Magistrate from the Magistrate's Secretary, with instructions to collect the amount due on the check. I am convinced from the testimony before me, that the defendant undertook the collection of the Taylor check in his official capacity as a constable, that he went to Cheswold and collected the amount due on said check in his official capacity as a constable and made the settlement with King in office of the Magistrate, where he first became connected with the transaction, in his official capacity as a constable.

The fact that King negotiated with defendant about his fee offering him $35, $45, $55 and finally $65 which the defendant agreed to accept, shows that he considered the fee exorbitant and not authorized by law. For the same reason it appears that the defendant looked upon the fee which he received as not being authorized by law, otherwise he would not have negotiated with King but told him the legal fee.

The argument that it is necessary for the State to prove the tendering or handing over, by King to the defendant, of a sum of money or some other item of value, is not convincing.

Prosecutions of this character, under statutes like the one involved in this case, must be determined upon the evidence produced at the trial. The authorities are not helpful.

I am convinced from the testimony before me, that the defendant, while acting in an official capacity, demanded and received from the prosecuting witness King, a fee not authorized by law.

The motion for a new trial is refused.