JOURNAL ENTRY and OPINION
{¶ 1} Appellant Vickie L. Mercadante appeals from her guilty plea to a fourth degree felony charge of driving while under the influence of alcohol.[1] Mercadante assigns the following errors for our review:
 {¶ 2} "I. The trial court erred to the prejudice of appellant by denying appellant's motion to suppress evidence."
 {¶ 3} "II. The appellant's `no contest' plea was not knowingly, intelligently, and voluntarily entered into and the trial court erred to the prejudice of appellant by accepting said plea."
 {¶ 4} Having reviewed the record and pertinent law, we vacate Mercadante's plea and remand for further proceedings. The apposite facts follow.
 {¶ 5} Mercadante was indicted by the Grand Jury for one count of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), a felony of the fourth degree, due to Mercadante's three prior DUI convictions.
 {¶ 6} Mercadante filed a motion to suppress arguing the stop of her vehicle was illegal; the officer lacked probable cause to arrest her for driving under the influence; the field sobriety tests were not given in strict compliance with the National Highway Traffic Safety Administration (NHTSA) standards; and her Fifth Amendment right against self-incrimination was violated.
 {¶ 7} On September 7, 2001 at approximately 2:10 a.m., Officer Resendez of the City of Middleburg Heights Police Department, was monitoring traffic on Interstate 71, southbound, just north of the Pearl Road exit. Officer Resendez testified he observed a vehicle, "swerve way over to the right, across the line."[2] The officer entered the highway to follow the vehicle and observed it weave within its lane a couple more times. The officer therefore initiated a traffic stop by putting on his overhead lights. Mercadante pulled her vehicle over.
 {¶ 8} Resendez's video camera was on and depicted the weaving. The audio of the camera, however, was not on to capture what was said during the traffic stop.
 {¶ 9} The officer asked Mercadante for her driver's license and noticed she had trouble locating the license, although she passed it several times. He detected an odor of alcohol from inside the vehicle. The officer then asked Mercadante to exit her vehicle so he could perform the field sobriety tests. According to the officer, Mercadante stumbled as she exited the vehicle. He described her as glassy-eyed, her speech was "a little bit slurred," and her mood was "giddy." The officer asked her to stand on one leg, which she could not perform. The officer asked her if she had been drinking, and she admitted to drinking a few glasses of wine. He asked her to try the one-leg test and instructed her not to use her arms for balance. When she did so, she stumbled to the side and flailed her arms to balance herself and tapped her foot down a couple of times for balance.
 {¶ 10} The officer asked her to perform the walk and turn test. Mercadante, however, refused to perform the test and told him "to do what he had to do."[3]
 {¶ 11} After considering this evidence, the trial court denied Mercadante's motion to suppress. Thereafter, Mercadante changed her plea to "no contest." The trial court entered a finding of guilty and sentenced Mercadante to a term of six months in the Ohio State Reformatory for Women and imposed a fine of $500. Additionally, the trial court suspended her driver's license for a period of three years and also stated "post release control is a part of this prison sentence for the maximum period allowed for the above felony(s) under R.C. 2967.28."
 {¶ 12} The trial court denied Mercadante's motion to stay pending appeal. This court, however, granted a stay upon the posting of a $5,000 appeal bond, which Mercandante posted.
 {¶ 13} In her first assigned error, Mercadante argues the trial court erred by denying her motion to suppress. She argues the traffic stop was illegal because it was not based on a reasonable and articuable suspicion that criminal activity was taking place, probable cause did not support her arrest, and her Fifth Amendment right against self-incrimination was violated.
 {¶ 14} We begin our analysis with the appropriate standard of review. The court in State v. Lloyd[4] stated, "our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. * * * This is the appropriate standard because `in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard."[5]
 {¶ 15} In Terry v. Ohio,[6] the U.S. Supreme Court held a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes the individual is engaged in criminal activity. In justifying a Terry-type intrusion, however, the police officer may not rely upon a mere hunch or an unparticularized suspicion.[7] "The police officer must be able to point to specific and articuable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[8]
 {¶ 16} In this case, Mercadante challenges the reasonableness of the stop of her vehicle by contending she only swerved one time. However, according to Officer Resendez's testimony, the car swerved several times, although only once over the center line. "Where an officer has an articuable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid."[9] Because the officer witnessed Mercadante driving erratically, we conclude the stop of her vehicle was valid.
 {¶ 17} Mercandante also argues there was no probable cause to arrest her because the field sobriety tests were not administered in strict compliance with testing standards as admitted to by Officer Resendez.
 {¶ 18} In State v. Homan,[10] the Ohio Supreme Court determined that in order for the results of field sobriety tests to be admissible on the issue of probable cause to arrest, the testing must have been conducted in strict compliance with NHTSA standards. Recently, the Ohio Supreme Court in State v.Schmitt,[11] explicitly extended its holding in Homan
and found while the results themselves were inadmissible, a police officer may testify regarding his observations during performance of nonscientific standardized field sobriety tests.[12] The Court specifically held:
"The certified conflict concerns whether an officer'sobservations regarding a defendant's performance on nonscientificfield sobriety tests should likewise be admissible as layevidence of intoxication. It is generally accepted that virtuallyany lay witness, including a police officer, may testify as towhether an individual appears intoxicated. Columbus v. Mullins(1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. See,also, State v. McKee (2001), 91 Ohio St.3d 292, 296,2001 Ohio 41, 744 N.E.2d 737. Such lay testimony is often crucial inprosecuting drunk driving cases. Moreover, such evidence isrelevant and admissible pursuant to Evid.R. 401 and Evid.R. 402.Thus, courts have recognized that `to prove impaired drivingability, the state can rely on physiological factors (e.g.,slurred speech, bloodshot eyes, odor of alcohol) and coordinationtests (e.g., field sobriety tests) to demonstrate that a person'sphysical and mental ability to drive is impaired.' State v.Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528,1997 Ohio App. LEXIS 4846, 1997 WL 703373.
"* * *
"The nonscientific field sobriety tests involve simpleexercises, such as walking heel-to-toe in a straight line(walk-and-turn test). The manner in which a defendant performsthese tests may easily reveal to the average layperson whetherthe individual is intoxicated. We see no reason to treat anofficer's testimony regarding the defendant's performance on anonscientific field sobriety test any differently from histestimony addressing other indicia of intoxication, such asslurred speech, bloodshot eyes, and odor of alcohol. In all ofthese cases, the officer is testifying about his perceptions ofthe witness, and such testimony helps resolve the issue ofwhether the defendant was driving while intoxicated.
 "Unlike the actual test results, which may be tainted, theofficer's testimony is based upon his or her firsthandobservation of the defendant's conduct and appearance. Suchtestimony is being offered to assist the jury in determining afact in issue, i.e., whether a defendant was driving whileintoxicated. Moreover, defense counsel will have the opportunityto cross-examine the officer to point out any inaccuracies andweaknesses. We conclude that an officer's observations in thesecircumstances are permissible lay testimony under Evid.R. 701.Therefore, we answer the certified question in the negative andhold that a law enforcement officer may testify at trialregarding observations made during a defendant's performance ofnonscientific standardized field sobriety tests."[13]
(Emphasis added.)
 {¶ 19} In applying this precedent to the current case, Officer Resendez's testimony regarding his observations of Mercadante's performance of the field sobriety tests was admissible. Therefore, in addition to the fact he observed Mercadante driving erratically, her eyes were glassy and she smelled of alcohol, his testimony regarding her stumbling and flailing while attempting to perform the tests were admissible observations. Taken together, the observations supported probable cause to arrest Mercadante for driving under the influence.
 {¶ 20} Finally, Mercadante argues her Fifth Amendment right against self-incrimination was violated when the officer testified to statements Mercadante made, prior to Miranda warnings being administered. Officer Resendez testified when he questioned Mercadante whether she had been drinking, she admitted she drank several glasses of wine.
 {¶ 21} Courts have consistently rejected the idea that police must first read a suspect Miranda rights before conducting field sobriety tests since roadside questioning of a motorist pursuant to a routine traffic stop does not ordinarily constitute custodial interrogation requiring Miranda warnings.[14]
 {¶ 22} In Berkemer v. McCarty,[15] like in the instant case, the officer had inquired of the motorist whether he had been drinking. The United States Supreme Court ruled that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for the purposes of the Miranda rule. The Berkemer court noted that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.[16] The Court stated that "* * * In short, the atmosphere surrounding an ordinary traffic stop is substantially less police dominated than surrounding kinds of interrogation at issue in Miranda itself, * * * the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."[17] Therefore, the trial court did not err in failing to suppress Mercadante's statement to the officer. Mercadante's first assigned error is overruled.
 {¶ 23} In her second assigned error, Mercadante argues her "no contest" plea was not knowingly, and voluntarily given.
 {¶ 24} Mercadante argues the trial court failed to advise her that she may be subject to post-release control after her sentence was served. Mercadante was subject to the possibility of post-release control at the parole board's discretion. Pursuant to R.C. 2967.28(C), post-release control for certain third degree felon-ies, and not felony sex offenses for fourth and fifth degree felonies are imposed at the discretion of the parole board.
 {¶ 25} In Woods v. Telb[18] the defendant pled guilty to a fifth degree theft felony, which subjected him to post-release control at the parole board's discretion. The Ohio Supreme Court held in its syllabus:
 {¶ 26} "Pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence."[19]
 {¶ 27} The Supreme Court reasoned that although post-release control is discretionary, it is still a part of the defendant's "actual sentence."[20] In Woods, the Court found the defendant was sufficiently notified of the possibility of post-release control because it was explained in "his signed plea form and in his sentencing entry."[21]
 {¶ 28} This court in State v. Delventhal,[22] relying in part on Woods v. Telb, vacated a guilty plea when the record indicated the defendant was not informed at his plea hearing that post-release control could be part of his sentence. Delventhal pled guilty to a fourth degree felony charge of driving under the influence of alcohol. The trial court failed to advise Delventhal at the plea hearing regarding the possibility of post-release control, but did advise him at the sentencing hearing.
 {¶ 29} In finding the plea was invalid, this court concluded that R.C. 2943.032 and R.C. 2919.19(B)(3) require a judge to inform a defendant of post-release control sanctions prior to accepting a guilty plea. This court concluded that advising the defendant of the possibility of post-release control at sentencing does not render the plea voluntary after the fact and held to read the holding in Woods otherwise, would nullify R.C.2943.032 and R.C. 2919.19(B)(3), which require notification at the time of taking the plea. The trial court went on to explain that the substantial compliance rule is not satisfied where the judge is required to inform the defendant personally and fails to do so.[23]
 {¶ 30} In the instant case, Mercadante was not informed regarding the possibility of post-release control at the plea hearing or at the sentencing hearing. Instead, the trial court imposed it in the journal entry. Abiding by the precedent established by the Ohio Supreme Court and this court's subsequent case in Delventhal, we conclude the failure to advise Mercadante at her plea hearing regarding the possibility of post-release control rendered her plea involuntary as she was not apprised of the necessary information regarding her maximum sentence in determining whether to plead.
 {¶ 31} We also find the trial court was without authority to order the imposition of the maximum post-release control in the journal entry. When a defendant has been convicted of a fourth degree felony for which post-release control is not mandatory, the court does not decide whether to impose post-release control. Rather the parole board determines whether a period of post-release control is needed before it releases the prisoner.[24] Mercadante's second assigned error is sustained. The remaining arguments in Mercadante's second assigned error need not be addressed because they are moot.[25]
Judgment vacated and remanded.
Kilbane, J., concurs;
[1] This case was stayed pending the Ohio Supreme Court's decision in State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37.
[2] TR. at 10.
[3] Because he was not certified to conduct the Horizontal Gaze Nystagmus test, the officer radioed Officer Swanson to perform the test. Officer Swanson did not appear to testify regarding the results of the test.
[4] (1998), 126 Ohio App.3d 95.
[5] Id.
[6] (1968), 392 U.S. 1.
[7] State v. Ford (1989), 64 Ohio App.3d 105.
[8] Terry, 392 U.S. at 21.
[9] Dayton v. Erickson (1996) 76 Ohio St.3d 3, 11-12.
[10] 89 Ohio St.3d 421, 2000-Ohio-212.
[11] 101 Ohio St.3d 79, 2004 Ohio 37, at P15.
[12] The Court also noted that pending the appeal of the case, the legislature had amended R.C. 4511.19 and that strict compliance with testing standards is no longer required. Instead, the arresting officer must "substantially" comply with the testing standards.
[13] Id. at ¶ 12, 14, 15.
[14] See, e.g., Berkemer v. McCarty (1984), 468 U.S. 420,82 L.Ed.2d 317, 104 S.Ct. 3138; State v. Feasel (1988),41 Ohio App.3d 155, 157; North Royalton v. Smyth (May 13, 1999), Cuyahoga App. No. 74029; Cleveland v. Criss (Dec. 10, 1998), Cuyahoga App. No. 72862; State v. Pelz (Nov. 5, 1998), Cuyahoga App. No. 73654.
[15] (1984), 468 U.S. 420, 82 L.Ed.2d 317, 104 S.Ct. 3138.
[16] Berkemer at 421.
[17] 468 U.S. at 438-439.
[18] 89 Ohio St.3d 504, 2000-Ohio-171.
[19] Id. at paragraph two.
[20] Id. at 511.
[21] Id. at 513.
[22] Cuyahoga App. No. 81034, 2003-Ohio-1503.
[23] Although this court has previously found failure to advise a defendant of mandatory post-release control renders a plea invalid, Delventhal is the first case in our district to apply the reasoning to non-mandatory post-release control. However, we see no reason to make a distinction between mandatory and non-mandatory post-release control, because the Ohio Supreme Court in Woods v. Telb made no such distinction, and neither do the statutes at issue, R.C. 2929.19(B) and R.C. 2943.032.
[24] R.C. 2967.28(C); Woods v. Telb (2000),89 Ohio St.3d 504. State v. Jordan, Cuyahoga App. No. 80675, 2002-Ohio-4587;State v. Hlavsa (Oct. 19, 2000), Cuyahoga App. No. 77199.
[25] App.R. 12(A)(1)(c).