Travis John RAY, II, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Jan. 30, 1970.

Howard M. Berg, Wilmington, for defendant below, appellant.

Richard R. Wier, Jr., Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice.

After non-jury trial, the defendant was found guilty of robbery. The facts relevant to the various grounds of this appeal will be stated as each ground is discussed.

I.

The defendant was not arraigned. It is argued, on the basis of State v. Trabbold, Del.Super., 8 Terry 391, 91 A.2d 537 (1952), that the Superior Court committed error fatal to the conviction by reason of its failure to arraign the defendant.

It appears that, prior to the commencement of the trial, the defendant's attorney filed the required notice[1] of the defend-

---

1. Superior Court Criminal Rule 12.1, Del. C.Ann. provides:

   "If the defendant intends to rely on the defense of insanity at the time of the alleged crime, he shall, not less than 30 days before the date set for trial, serve upon the Attorney General a notice of such intention. The Court may for cause shown allow late filing of the notice or may make such other order as may be appropriate."

ant's intent to enter a plea of not guilty by reason of mental illness. Thereafter, the defendant's attorney entered that plea on behalf of the defendant and in his presence prior to trial. The trial proceeded on the basis of that defense, and was participated in throughout by the defendant and his attorney, although the defendant did not take the stand. No objection was made to the failure to arraign until after the conviction.

The general rule prevailing in this jurisdiction since *Trabbold* has been that failure to arraign a defendant is not necessarily fatal to his conviction; that a waiver of arraignment may be implied from the defendant's participation in the trial and other attendant circumstances. We approve that general rule.

The question, then, is whether a waiver of arraignment should be implied under the facts and circumstances of this case. We hold here, in agreement with the Trial Court, that an implied waiver arose where the defendant's attorney entered a plea on behalf of the defendant and in his presence, where the trial was permitted to proceed on the basis of that plea as if an arraignment had been held, and where there was no objection made for want of an arraignment until after conviction. See Garland v. Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914).

## II.

The defendant contends that the Trial Court erred in imposing upon him the burden of establishing the defense of mental illness, to the satisfaction of the trier of fact, under the standards set forth in Longoria v. State, Del.Supr., 3 Storey 311, 168 A.2d 695 (1961). The facts relevant to this argument are these:

In Indiana, the defendant was charged with armed robbery, and the shooting of a policewoman in the commission thereof, in June 1966. He was immediately committed to a mental hospital in Indiana where he received 52 electric shock treatments during the period August to December 1966. In July 1967, the defendant was diagnosed as "schizophrenic, paranoid type" and "not sane within the law". For this reason the defendant was never tried on the Indiana charge. In November 1967, he was transferred to the Delaware State Hospital under the Interstate Compact. Upon admission there, the "initial impression" of the examining psychiatrist was "schizophrenic reaction, paranoid type in social remission". In January 1968, after treatment, the defendant was released from Delaware State Hospital with a diagnosis of "personality trait disturbance, emotional unstable personality"; and with instructions to continue medication and to take out-patient treatment at the Mental Hygiene Clinic. The defendant received no further treatment after release. The instant robbery was committed about six months later.

The defendant argues in this connection that there is a presumption of continuing mental illness once established; that in view of the finding of mental illness in the Indiana hospital in 1967, the defendant should have had the benefit of that presumption and the burden should have been upon the State to rebut it.

We have recently recognized the presumption of continuing mental illness. Mills v. State, Del.Supr., 256 A.2d 752 (1969). But the presumption is not applicable as an element of defense in this case by reason of the finding of competency by the staff at the Delaware State Hospital in January 1968—a finding of equal dignity to the earlier finding of mental illness by the staff at the Indiana hospital, there having been no formal adjudication of the matter in either place. Accordingly, at the time of the instant offense in June 1968, the coverage of the presumption of continuing mental illness, which may have otherwise arisen from the Indiana finding, was removed by the superseding Delaware finding.

We hold, therefore, that there was no error in imposing upon the defendant the

burden prescribed by Longoria v. State, Del.Supr., 3 Storey 311, 168 A.2d 695 (1961): the burden of establishing by a preponderance of the evidence, to the satisfaction of the trier of fact, that at the time of the specific offense mental illness deprived him either of the capacity to distinguish between right and wrong as to that offense, or of sufficient will power to choose whether he would do the act or refrain from doing it.

### III.

The defendant contends that, under the evidence in this record, the Trial Court erred in concluding that the defendant failed to sustain the burden of proof imposed by *Longoria*.

The Trial Court found the expert testimony as to mental illness to be "almost evenly balanced"; and, in connection with that issue, it proceeded to examine in detail the evidence of the defendant's total course of conduct in the planning and commission of the instant offense. It appears that the Trial Court's conclusion as to the defense of mental illness was based, for the most part, upon the examination of such facts.

■ The defense of mental illness is a factual issue to be decided by the trier of fact. Longoria v. State, Del.Supr., 3 Storey 311, 168 A.2d 695 (1961); 11 Del.C. § 4701. If there is substantial evidence to support the finding of the Court sitting as the trier of fact, we will not disturb the finding unless it is clearly wrong. In this connection, we consider the scope of review in a non-jury criminal case to be substantially the same as in a non-jury civil case. See Nardo v. Nardo, Del.Supr., 209 A.2d 905, 913, fn. 4 (1965); Lank v. Stei-

ner, Del.Supr., 224 A.2d 242 (1966); Art. 4 Del.Const. § 11, Del.C.Ann.

■ There is substantial evidence in the record of this case to support the Trial Court's finding and conclusion as to the defense of not guilty by reason of mental illness. We cannot say that such finding and conclusion were clearly wrong. Therefore, we will not substitute our judgment, for that of the Trial Court on the issue.

### IV.

The defendant argues that, by reason of his mental condition, (a) an out-of-court identification by the victim violated the rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); (b) his right to be protected against self incrimination was violated when oral statements were taken from him by the police; and (c) a diary admitted in evidence was illegally taken from the defendant's apartment.

The Trial Court found from the undisputed evidence that, immediately upon arrest, the defendant was given the usual *Miranda* warnings.[2] It appears that all events here complained of occurred thereafter.

■ As to the out-of-court identification: This point is raised for the first time on this appeal. The Trial Court had no opportunity to pass upon this contention. It comes too late.

■ As to the oral statements: The Trial Court found expressly from undisputed evidence that they were voluntarily made with an understanding by the defendant of his rights. We find no sufficient basis to disturb that finding.

2. In Miranda v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), the United States Supreme Court held that one in custody who is interrogated by officers about matters that may tend to incriminate him is entitled to be warned "that he has the

right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

■ As to the diary: The Trial Court stated that it "did not rely on anything in the diary in reaching its conclusions and holdings." We hold, therefore, that any error in the admission of the diary was not prejudicial error.

## V.

■ The defendant complains that there was prejudicial error in the Trial Court's becoming aware of a New Jersey detainer warrant issued for the defendant on another charge of robbery.

This contention is unworthy of much discussion. We see no possible prejudice in view of the defendant's emphasis during the trial upon his other robberies in this State and elsewhere in support of his defense of mental illness.

## VI.

■ Finally, the defendant contends that reversible error arose from the following ruling of the Trial Court under Superior Court Criminal Rule 16(a) [3]:

"Defendant also objected to testimony as to his statements because in advance of trial defendant had moved by way of criminal discovery for an order that the Attorney General produce 'Written or recorded statements or confessions made by the defendant'. Criminal Rule 16(a) of the Superior Court provides that the Court may order the State to produce such statements or confessions. Pursuant to such motion and rule an order was entered.

"No statement or notice that defendant had made an oral statement had been pro-

duced by the State in response to the order. At the trial the officer testified that defendant had made no written statement and the oral statement made by defendant had not been recorded or reduced to writing. The officer did have notes he had made as to some of what defendant had said to him and the officer had refreshed his recollection by reference to such notes.

"The State took the position that it was under no duty to produce such notes under the wording of the rule and of the Court order. I agree. Rule 16 as now worded does not require the advance production of mere notes made by an interviewing officer to refresh his recollection as to what was said to him. In any event in this case a prima facie case was made out without the use of the statements.

"The defense attorney said the introduction of the testimony as to statements took him by surprise in view of the failure of the State to produce the notes in advance. In view of this the Court offered to delay the proceedings for a day or two, if he so desired, to give him more time to prepare his defense. He elected not to request such delay."

The contentions now before us in this connection are the same as those which were before the Trial Court. We find no error in the ruling made by the Trial Court in this respect.

\*    \*    \*    \*    \*    \*

There was no reversible error upon any of the grounds asserted. Accordingly, the judgment of the Superior Court is affirmed.

---

3.  Superior Court Criminal Rule 16(a) provides in pertinent part that upon
    "  \*   \*   \*   motion of a defendant the court may order the Attorney General to permit the defendant to inspect and
    copy or photograph any relevant \*  \*  \* written or recorded statements or confessions made by the defendant \*  \*  \*."