William C. JOHNSON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 13, 1988.
Decided: Nov. 17, 1988.

John S. Malik, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, and MOORE, JJ.

CHRISTIE, Chief Justice:

This is an appeal from a criminal conviction in the Superior Court. A jury found the defendant/appellant, William Curtis Johnson, guilty of kidnapping in the first degree and burglary in the second degree. Johnson was sentenced to ten years' imprisonment on the burglary charge and life imprisonment on the kidnapping charge. On appeal, Johnson advances five claims of error.

He asserts that his conviction should be reversed because the trial court erred by (1) violating Johnson's constitutional right to confront his accusers by refusing to allow the defense counsel to ask the victim if she had previously had sexual relations; (2) refusing to give appellant's proposed jury instruction concerning the Delaware Rape Shield Law; (3) denying appellant's motion *in limine* to exclude scientific evidence under D.R.E. 403; (4) refusing to hold an evidentiary hearing concerning threats of force employed by police officers to obtain Johnson's blood sample; and (5) admitting into evidence three pages of Detective Humphrey's handwritten notes which contained the substance of an oral statement by Johnson because this statement had not been disclosed to the defense in response to the defense's specific discovery demand. Upon consideration of these claims, we find the first four to be without merit. However, we find Johnson's final assertion to be valid and hold that since the discovery violation was prejudicial to Johnson, his convictions must be reversed.

## FACTS

The evidence presented by the State indicates that shortly before 7 a.m. on March 20, 1986, the twelve-year-old victim was in her house, preparing to go to school. Her mother had already left for work and taken the victim's younger brother to a babysitter. The victim was alone. At approximately 6:55 a.m., the defendant knocked on the front door of the victim's house. The victim opened the door and saw Johnson, whom she knew as a family friend. He was holding a bag of donuts and a cup of

coffee. The defendant asked the victim where she was preparing to go. When she answered that she was going to school, he replied, "No, you're not." He then picked the victim up and put her over his shoulder and carried her into the house. Although she resisted, she was unable to get free. Johnson then placed the victim on the floor and grabbed her vaginal area with his hand. When the victim continued to resist, Johnson strangled her until she lost consciousness.

When she regained consciousness, she was on a couch, and her clothing was "dirty." Donut crumbs from the donuts Johnson had brought with him were scattered all across the floor. Johnson was still present. He told her that he would kill her if she told anyone what had happened. He then gave her three one-dollar bills and drove her to the house of a family friend where her mother would normally pick her up on her way home from work.

When the victim's mother returned to pick up her daughter at around 10 p.m., she immediately saw that her daughter's eyes were puffy and bloodshot. The victim told her mother that Johnson had attacked her. Her mother called the police, and the victim was taken to Christiana Hospital where she was examined at approximately 3:30 a.m. A physical examination of the victim disclosed signs of strangulation and the presence of seminal fluid in her vagina. The clothing she wore during the attack was sent to the Federal Bureau of Investigation where laboratory testing revealed the presence of seminal fluid consistent with the defendant's blood type.

Johnson was arrested the day after the attack. His defense was alibi. He claimed that he was on his way to work at the time of the offense. Although he admitted that he had been alone with the victim later that same morning and had driven her to Wilmington, he denied that he had strangled or molested her.

## I.

The defendant's first contention is that the trial court's refusal to allow him to ask the victim if she had ever engaged in sexual relations before the day of the attack violated his right to confront his accuser as provided for by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution.[1]

During the course of the trial, the State presented evidence that the defendant had sexually attacked the victim on the morning of March 20. The victim testified that on that morning the defendant picked her up on her doorstep and carried her into her house, grabbed at her vagina, and when she continued to resist his actions began choking her until she lost consciousness. Special Agent Joseph J. Errera of the Federal Bureau of Investigation testified that he conducted tests which revealed the presence of male seminal fluid on the underwear and jeans the victim wore during the alleged attack and on the trousers the defendant wore during the alleged attack. The State also presented the testimony of Dr. Joseph Dane, the doctor who examined the victim at Christiana Hospital on March 21, 1986. Dr. Dane testified that slides obtained from the victim's vaginal cavity revealed the presence of sperm, which indicated that intercourse had occurred. On cross-examination, Dr. Dane stated that he assumed that it was possible for sperm to remain detectable in the vagina for as long as three days after intercourse occurs.

After this evidence had been presented, the defense counsel indicated to the court, outside the presence of the jury, that he intended to ask the victim whether she had ever had sex prior to the date of the alleged attack. Counsel stated that this would be the single question he wished to ask concerning the possibility that the victim had sex prior to the alleged attack. The trial court denied the defendant's motion, ruling that the proposed question

---

**1.** The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him...." Article I, Section 7 of the Delaware Constitution similarly provides, in pertinent part, that "[i]n all criminal prosecutions, the accused hath a right ... to meet the witnesses in their examination face to face...."

could not be asked because it did not satisfy the requirements of Delaware's rape shield statute, 11 *Del.C.* § 3508.[2]

In his motion for a new trial, the defendant contended that he should have been permitted to ask his question. The trial judge denied the motion, ruling that the defendant's proposed question had properly been excluded on the basis that it did not satisfy the criteria of either 11 *Del.C.* § 3508 or D.R.E. 403.[3]

Defendant now reiterates his contention that he should have been permitted to ask this question. He argues that 11 *Del.C.* § 3508 is inapplicable to the case because, by its very terms, the statute applies only to the crimes of rape, attempted rape, solicitation for the crime of rape, and conspiracy to commit rape.

■ We hold that although Delaware's rape shield law may have limited direct application, the trial judge's ruling on the proposed question was justified under other applicable rules of evidence. The proposed question would have inquired whether the victim had *ever* had a previous sexual experience. The question thus does not have a narrow time frame. By asking this question, the defense counsel stated he was attempting to show that the seminal fluid found in the victim may have come from someone other than the defendant, noting that Dr. Dane had testified that seminal fluid may be detectable in the vagina for up to three days. His proposed question, however, was in no way limited to this three-day period. The defense counsel stated that this was the only question he would ask on this subject. Even if the victim had answered this question in the affirmative, the question was so open-ended that the most her answer could have possibly shown was that, at some unknown time before the attack, she previously had a sexual experience. It would be impossible for the jury to know whether the time period involved made her answer relevant or not. If the victim had a previous sexual experience more than three days before she was attacked, it would be totally irrelevant to the present case. Thus, the answer to the proposed question would have been either irrelevant or it would have created confusion of the issues and misled the jury.

The determination of whether the probative value of a piece of evidence is substantially outweighed by the danger of unfair prejudice is a matter which is within the discretion of the trial judge. *Williams v. State,* Del.Supr., 494 A.2d 1237, 1241

**2.** 11 *Del.C.* § 3508 provides:

*Rape—Sufficiency of evidence; proceedings in camera.*

(a) In any prosecution for the crime of rape; an attempt to commit rape if such attempt conforms to § 531 of this title; solicitation for the crime of rape if such offense conforms to § 502 of this title; or conspiracy to commit rape if such offense conforms to § 512 of this title, if evidence of the sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness the following procedure shall be followed:

(1) The defendant shall make a written motion to the court and prosecutor stating that the defense has an offer of proof concerning the relevancy of evidence of the sexual conduct of the complaining witness which he proposes to present, and the relevancy of such evidence in attacking the credibility of the complaining witness.

(2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

(3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at such hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant.

(4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and is not inadmissible, the court may issue an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

(b) As used in this section, "complaining witness" shall mean the alleged victim of the rape, attempted rape, conspiracy or assault.

**3.** D.R.E. 403 provides:

EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION OR WASTE OF TIME.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

(1985). Considering the dubious relevancy and limited probative value of the evidence the answer to the question would provide, the trial judge found that the probative value of that evidence was substantially outweighed by the danger of confusion of the issues and the chance that the jury would be misled. Under these circumstances, we find no abuse of discretion in the trial judge's ruling refusing to permit the question to be asked under D.R.E. 403.

## II.

The defendant's second contention is that the trial court erred in refusing to give a proposed jury instruction, entitled "Rape Shield Statute." The instruction would have informed the jury, *inter alia*, that "the Court has limited any investigation of the prior sexual conduct of the witness, pursuant to Delaware law." We find no merit to defendant's argument on this point.

■ As previously explained, the trial court properly excluded the defense's attempt to raise the issue of any possible previous sexual conduct of the complaining witness. The requested "Rape Shield Statute" instruction was basically an attempt by the defense to bring before the jury an area of inquiry that the court had previously ruled inadmissible. *See Commonwealth v. Quartman*, Pa.Super., 458 A.2d 994, 998 (1983) (refusal to give Rape Shield Instruction proper when proposed instruction was merely an attempt to present excluded evidence to the jury in a backhanded manner). Jury instructions are only required to state the law applicable to the particular facts in controversy, and it is not error to refuse to give a jury instruction which has no applicability to the facts presented during trial. *Derrickson v. State*, Del.Supr., 321 A.2d 497, 501–02 (1974). We rule that the trial judge did not err in refusing to charge the jury on a matter that was not in evidence.

## III.

The defendant also contends that the trial court erred in denying the defense motion to exclude evidence of the scientific analysis of seminal stains and blood and saliva samples. This argument is without merit.

The defendant asserts that the evidence of the scientific analysis of the seminal stains and blood and saliva samples should have been excluded on the ground that it was more prejudicial than probative. Additionally, he submits that the evidence was cumulative, because the prosecution could prove the sexual nature of the attack through the testimony of the victim.

■ The decision on whether to admit evidence as relevant is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Baynard v. State*, Del.Supr., 518 A.2d 682, 692–93 (1986); *Lampkins v. State*, Del. Supr., 465 A.2d 785, 790 (1983). In this case, Johnson was charged with the offenses of burglary in the second degree and kidnapping in the first degree. The former charge alleged that Johnson entered a building "with the intent to commit the crime of Sexual Assault therein," while the latter charge alleged that Johnson "did unlawfully move or restrain [the victim] with the intent of violating or abusing her sexually." In order for the State to prove the charges, it had to prove that Johnson intended to commit a sexual assault, and evidence tending to prove sexual assault was relevant to a material issue.[4]

Evidence that seminal fluid consistent with the defendant's blood type was on the clothing the victim wore the day she was attacked tended to show the sexual nature of the assault upon the victim and that the defendant was among those who might have committed the assault. This physical evidence also tends to corroborate the victim's testimony, and it is evidence of what occurred after the victim lost consciousness.

---

**4.** Because the victim was a juvenile, jurisdiction for the crime of sexual assault, 11 *Del.C.* § 761, lay in Family Court. 10 *Del.C.* § 922(17).

D.R.E. 403 mandates that "evidence may be excluded if it's probative value is substantially outweighed by the danger of unfair prejudice...." As noted, this scientific evidence had considerable relevance. In the case of *Rush v. State*, Del.Supr., 491 A.2d 438 (1985) (*en banc*), we ruled that "[t]he proper and fair limitation on cumulative and/or prejudicial evidence is best evaluated by the trial court, which has a first-hand opportunity to consider these matters." *Id.* at 445. It is clear that the trial court did not abuse its discretion in admitting the test results into evidence.

■ The defendant also contends that these scientific tests are not conclusive and, therefore, they should have been ruled inadmissible on the basis of D.R.E. 403. Although scientific tests, such as the blood test, are not conclusive as to identity, this consideration goes to the weight and value accorded them, not whether they are admissible. *State v. Messier*, 146 Vt. 145, 499 A.2d 32, 39 (1985); *State v. Bauer*, 210 Mont. 298, 683 P.2d 946, 951 (1984); Annotation, *Admissibility, Weight, and Sufficiency of Blood–Grouping Testing in Criminal Cases*, 2 A.L.R.4th 500, §§ 4, 6 (1980).

### IV.

The defendant's next contention is that while the trial court was considering the defense's motion to suppress his blood sample, it erred by refusing to hear testimony from him concerning threats of force employed by police officers in order to obtain a blood sample.

After the defendant was arrested, the State moved for an order compelling the defendant to submit to the taking of blood and saliva samples. The order was granted over the objection of the defendant's first attorney. The samples were subsequently taken at the prison, tested, and used at trial to link the defendant to seminal stains found on the clothing the victim was wearing when she was attacked.

Prior to trial, the defendant's attorney moved to suppress the blood sample on the ground that the defendant was not permitted to have his attorney present when his blood sample was taken. On the morning of trial, the defense counsel alleged as an additional ground for suppression that the police and prison guards had acted in an unreasonable manner in taking the blood sample by spraying mace in the defendant's face. The prosecutor stated that the State had a witness who was present when the sample was taken who said this never occurred. The State then asked that the defendant be sworn and that he testify as to the use of mace. The trial judge indicated that he would hear testimony on this charge but that before going forward the defendant's attorney should advise his client that he might face a perjury charge if he was lying. After a brief conversation with the defendant, the defense counsel stated that Johnson was willing to testify but he amended the proffer to a charge that one of the prison guards displayed a can of mace to Johnson and threatened to spray the mace in his face if he resisted the taking of blood. Johnson would testify that after being so informed, he submitted to the procedure without further incident.

■ After considering this proffer, the trial judge concluded that there was no need for a hearing because Johnson did not have the right to resist the taking of the blood pursuant to a court order and, thus, the police engaged in no impermissible activity if they informed the defendant they would employ force if he resisted. The court also denied the defendant's motion to suppress the blood sample, holding that the defendant did not have the right to have an attorney present when the blood sample was taken.

There was no error of law or abuse of discretion in these rulings. The defendant did not have the right to have his counsel present when the blood sample was taken because this conduct does not implicate either the fifth amendment privilege against self-incrimination or the sixth amendment right to counsel. In the case of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that the fifth amendment was not activated when a blood sample was taken because "[n]ot even a shad-

ow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis." *Id.* at 765, 86 S.Ct. at 1832, 16 L.Ed.2d at 916. The United States Supreme Court has similarly held that the defendant does not have a sixth amendment right to have his counsel present when a blood sample is taken because "[k]nowledge of the techniques of science and technology is sufficiently available ... that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts." *United States v. Wade*, 388 U.S. 218, 227–28, 87 S.Ct. 1926, 1932–33, 18 L.Ed.2d 1149, 1158 (1967).

The defendant's second contention regarding the taking of his blood sample is that the trial court should have ordered a hearing to determine whether the sample was taken in a reasonable manner and whether accepted medical practices were followed. The *Schmerber* case requires that the blood test be administered in a responsible manner. 384 U.S. at 761, 86 S.Ct. at 1836, 16 L.Ed.2d at 919–20; *see also Brank v. State*, Del.Supr., 528 A.2d 1185, 1190 (1987).

When he was before the court the defendant made no allegation that the procedures used to take his blood did not meet modern medical standards. Unless factual allegations are proffered which justify a hearing, there is no need to hold one. *Duddles v. United States*, D.C.App., 399 A.2d 59, 63 (1979). The trial court did not err in declining to hold a hearing in this case because there was no showing in the record that either excessive force was employed or that unsound medical procedures were used to take the defendant's blood sample.

### V.

The defendant's final contention is that the trial court erred by admitting into evidence handwritten notes taken by Detective Humphrey of the New Castle County Police, who was the State's chief investigating officer in this case. The defense claims that the notes, which contained the substance of an oral conversation the defendant had with the detective, should not have been allowed into evidence because they were not supplied to defendant in response to the defendant's pretrial discovery demand. We are of the opinion that the failure of the State to disclose the notes was a clear violation of Superior Court Criminal Rule 16, and the introduction of the notes into evidence to refute the defendant's testimony was reversible error.

Before this case went to trial, the defendant sent the prosecution a discovery demand consisting of eighteen individually numbered paragraphs. Paragraph number two sought "[t]he substance of any oral statement by the Defendant, or any co-defendant, including recorded statements, indicating the date, time and location and officers present." The State failed to respond to the defendant's discovery request in a business-like way paragraph by paragraph. Instead, the State replied by sending the defense two separate cover letters, each accompanied by various materials. The prosecutor's initial reply stated that the accompanying enclosures "include the police reports, medical records, and F.B.I. reports." The prosecutor's second letter simply stated, "[e]nclosed is the final F.B.I. report. This completes my discovery obligation." The existence of Detective Humphrey's handwritten notes, which contained the substance of oral statements the defendant made to the detective, was not disclosed in either letter or in any of the accompanying materials.

During the course of the trial, Detective Humphrey testified concerning a statement the defendant made to him. After the State had completed its case-in-chief, the defendant took the witness stand and contradicted the detective's testimony concerning the statement. Thereafter, the State recalled Detective Humphrey to testify in rebuttal. With Detective Humphrey on the stand, the prosecutor attempted to lay the foundation for the introduction into evidence of certain handwritten notes which

the detective had taken concerning the statement. This was the first time the defense learned of the existence of these notes, and the defense objected to their use on the basis that they had not been included in the State's response to the defense's pretrial discovery request.

At a sidebar conference, the prosecution argued that complete discovery had been provided, and that it was incumbent upon the defense to move for an order compelling discovery if it believed that the State's discovery was incomplete. The defense counsel responded that because the prosecution did not individually answer each of his discovery requests he had no way of knowing that anything was being withheld, and thus had no way of realizing that there were any outstanding notes for him to request. The defense counsel also pointed out that paragraph two of his discovery request was broad enough to cover the notes in question. The trial judge stated that the defense's discovery request was ambiguous because it didn't specifically ask for notes made by a police officer. The prosecutor then offered to permit the defense counsel to read the notes, and the trial judge called a brief recess to permit this.

After the recess was over, the defense counsel informed the court that "I've had the opportunity to review [the notes] and I have no other objection notwithstanding the initial one that I noted previously." The trial judge then resumed the trial. Detective Humphrey finished relating how he had questioned the defendant at the police station after administering *Miranda* warnings to him. The notes he had taken of this questioning were then offered into evidence. At this point, the defense counsel stated that "[n]otwithstanding the previous objection I had noted, I have no *further* objections to these." (Emphasis added.) The notes contradicted the defendant's testimony and were very damaging to him.

On appeal, the defendant repeats his contention that the police notes were not supplied in response to a proper discovery demand and thus should not have been entered into evidence.

■ As an intitial matter, the State submits that the defense counsel waived his objection to the use of the notes and that, therefore, this issue has not been preserved for appeal. Supr.Ct. Rule 8; D.R.E. 103(a)(1); *Weber v. State*, Del.Supr., 457 A.2d 674, 684 (1983). The State points out that after the defense counsel had reviewed the notes during the recess, he stated, "I've had the opportunity to review [the notes] and I have no other objection notwithstanding the initial one that I noted previously." The trial judge evidently took this statement to mean that counsel was withdrawing his initial objection to the admission of the notes and directed the prosecutor to proceed with the case. The defense counsel did not request a ruling from the judge on his original motion and made no further objections.

The defense counsel submits that if he had no objection at all he would simply have said he had no objection and that since he instead said that he had "no *other* objection notwithstanding the initial one that I noted previously" (emphasis added) his statement did not amount to a waiver of his initial objection.

The defense counsel's use, or misuse, of the word "notwithstanding"[5] makes it difficult to determine the precise meaning of his utterance. The statement of the defense counsel is ambiguous. The right to which the statement pertained, however, is a most important one. This Court is of the opinion that it was error for the trial court to rely on that statement as a waiver of such an important right without further inquiry. Therefore, we rule that there was no effective waiver.

■ We first note that the discovery response made by the State was unacceptable in both form and substance. When the defense makes specific authorized discovery demands, the State should make

---

5. The word "notwithstanding" can have several different meanings depending on how it is used. When it is employed as an adjective it means despite, as an adverb nevertheless or however, and as a conjunctive although. *See Webster's Ninth New Collegiate Dictionary* 808 (1987).

specific and accurate replies. When the State replies, as it did here, by sending a short general cover letter and accompanying materials, but does not answer the defense's specific demands, the defense has a right to assume everything demanded has been provided in full. When the State provides a casual reply in answer to specific defense demands, the State is to be held accountable for any inaccuracies in its general reply.

In this case, despite the fact that the defense discovery demands consisted of eighteen individually numbered paragraphs, the State's general reply contained no information which would have put the defense on notice that material properly demanded under Rule 16 had not been supplied. In fact, the prosecutor actually misled the defense by stating in his second letter that his discovery obligation was completed. Having thus affirmatively misinformed the defense, the State cannot contend that it was the defense's burden to move for an order compelling more complete answers. Superior Court Criminal Rule 16(d) provides, in pertinent part, that:

> The party upon whom the request is served shall in turn serve a written response within 20 days after service of the request. The Court may fix a shorter or longer time for response. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified.

The State did not follow the procedure mandated by Rule 16(d). Not only did the State fail to mention that it was not providing complete discovery, but it compounded this error by representing that it had. The failure of the State to abide by Rule 16(d) cannot be blamed upon the defense.[6]

The State contends that it had no duty to provide the detective's notes during discovery because the defendant made no specific demand for notes made by the police. This contention does not address the issue. The defendant has never claimed that he is entitled to all the notes of the police officers. The defendant points out that under the Rule and his demand, he was entitled to the part of these particular police notes which contained the substance of oral statements the defendant made to Detective Humphrey. The State cannot successfully contend that the defendant's demand was not sufficiently specific, and that the defendant should have been more explicit in asking for police notes. Full responses to discovery are not contingent on the exact wording of clear demands. Such a technical approach would be contrary to the purpose of modern discovery and to the spirit of the Superior Court Criminal Rules, which is to provide for the "just determination of every criminal proceeding" and to secure "fairness in administration." Superior Court Criminal Rule 2.

A careful reading of Superior Court Criminal Rule 16(a) reveals that the rule clearly entitles the defendant to discovery of the substance of the police notes in question.[7]

---

6. In its brief, the State suggests that the prosecutor may have learned of the existence of the notes only after Detective Humphrey testified in its case-in-chief. The detective was an agent of the State. The State had a duty to find out about the notes before it responded to the discovery demand.

If the State had conducted a proper investigation of the material in its possession in order to provide specific answers pursuant to the initial discovery demand, the State should have been able to discover these notes.

7. Superior Court Criminal Rule 16(a) provides:
(a) *Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury*

*Testimony.* The defendant may serve upon the Attorney General a request to permit the defendant or someone acting in his behalf to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or a co-defendant (whether or not charged as a principal, accomplice or accessory in the same or in a separate proceeding), or copies thereof, and the substance of any oral statement which the State intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a state agent which are known by the Attorney General to be within the possession, cus-

Rule 16(a) contains a six part description of an oral statement which is subject to a discovery demand. The rule states that the defendant must have made (1) an oral statement (2) which the state intends to offer into evidence at the trial (3) made by the defendant whether before or after arrest (4) in response to interrogation (5) by any person then known to the defendant to be a state agent (6) which is known by the Attorney General to be within the possession, custody, or control of the State. Superior Court Criminal Rule 16(a). Detective Humphrey's notes contained an oral statement by the defendant which satisfied this criteria. The notes contained an oral statement by the defendant. The State appears to have intended to offer evidence of defendant's oral statement into evidence when it called Detective Humphrey to the stand, and it proceeded to do so. The defendant made the statement to Detective Humphrey, whom he knew at the time was a State agent, in response to interrogation by Detective Humphrey at the police station after he was arrested. Detective Humphrey possessed the notes. Thus, the defendant's statement contained in Detective Humphrey's notes falls within the parameters of discoverable material under Rule 16(a).

The State, relying on the case of *Ray v. State*, Del.Supr., 262 A.2d 643 (1970), contends that the handwritten notes of a police officer constitute items which do not fall within the purview of Rule 16(a). In the *Ray* case the defendant made a pretrial motion to discover "[w]ritten or recorded statements or confessions made by the de-

fendant." *Id.* at 647. The State did not produce anything in response to this request, although it possessed handwritten notes of an oral statement the defendant made to a police officer. *Id.* The officer who made the notes used them to refresh his recollection before testifying at trial. When this conduct was challenged, the trial court ruled that under the wording of Rule 16(a) the State had no duty to disclose the notes to the defendant. This Court sustained that ruling. *Id.*

The *Ray* case does not provide support for the State's action in the present instance, however, because Rule 16(a) was amended after that decision. In 1979, an amendment specifically expanded the range of Rule 16(a) to allow discovery of:

> the substance of any oral statement which the State intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a state agent.[8]

This amendment clearly enlarges the scope of material a defendant is permitted to obtain through discovery. As noted above, Detective Humphrey's handwritten notes contained the substance of oral statements by the defendant and satisfied all the requirements of Rule 16(a). When the State offered evidence as to defendant's oral statements without having complied with demands under Rule 16(a) in respect to such statements, it violated the mandate of Rule 16(a); however, no objection was

tody or control of the State, (2) written reports of autopsies, ballistics tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, and written reports of physical or mental examination of the defendant or the alleged victim by a physician, dentist or psychologist made in connection with the particular case, or copies thereof, which are known by the Attorney General to be within the possession, custody or control of the State, and (3) recorded testimony of the defendant before a grand jury.

8. This language closely parallels the language employed in Federal Rule of Criminal Procedure 16, which served as the model for Superior Court Criminal Rule 16. *See DeShields v. State*, Del.Supr., 534 A.2d 630, 644 (1987) (*en banc*).

The provision mandating discovery of a defendant's oral statements was added to Federal Rule of Criminal Procedure 16(a)(1)(A) as part of a 1975 amendment to Rule 16. The 1975 Committee Note on the amendment stated that "[t]he reason for permitting the defendant to discover his own statements seems obviously to apply to the substance of any oral statement which the government intends to use in evidence at the trial." Fed.R. Crim.Pro. 16, 1975 committee note and legislative history. *See also United States v. McElroy*, 2d Cir., 697 F.2d 459, 463 (1982) ("the amendment reflects the drafters' studied conclusion that pretrial discovery of oral statements serves significantly to protect the defendant's right to a fair trial.").

made until the defense found out about the State's failure to respond properly to its discovery demand.

The State stresses that it did not employ the notes in its case-in-chief, but only used them in rebuttal. This is irrelevant, however, because the language of Rule 16(a), which permits discovery for statements the State "intends to offer in evidence at the trial," applies to evidence the State offers into evidence at any time.[9] The State cannot avoid its discovery duties by carefully intending to use discoverable notes only if they are needed in rebuttal.

We note that the majority of federal circuits which have addressed the issue have held that Federal Rule 16(a)(1)(A) applies whether the evidence is introduced during the case-in-chief or rebuttal. As the tenth circuit held in *United States v. Scafe*, 10th Cir., 822 F.2d 928 (1987), "there is no valid reason for refusing disclosure of a defendant's statements, otherwise discoverable under Rule 16(a)(1)(A), on the ground that the rule applies only to evidence to be offered in the case in chief, and that the matters in question were not or are not to be offered except as rebuttal...." *Id.* at 935. *See also United States v. Bailleaux*, 9th Cir., 685 F.2d 1105, 1114 (1982); *United States v. Lewis*, D.C.Cir., 511 F.2d 798, 802–03 n. 8 (1975).

We believe that the policy consideration of ensuring that a defendant receives a fair trial, which is embodied in Superior Court Criminal Rule 16(a), requires that the rule apply to evidence presented in the case-in-chief and rebuttal. To permit the prosecution to withhold a defendant's oral statements from discovery, and then use them in rebuttal, would unfairly penalize a defendant who chose to testify. If the State wishes to use a discoverable statement at any time, it must have disclosed it to the defense pursuant to a proper discovery demand.

Although the State failed to comply with Rule 16, the conviction will be set aside only if the violation prejudiced the defend-

ant. By entering the notes into evidence *after* the defendant testified, the prosecution misled the defense in a very material way. This Court refers to such conduct as "sandbagging." We have previously inveighed against the prosecution's "sandbagging" a defendant in other trial contexts and have reversed the defendant's conviction if the "sandbagging" resulted in serious prejudice. *See Bailey v. State*, Del.Supr., 440 A.2d 997 (1982) (use of the State's rebuttal closing argument to make new arguments to the jury so as to deprive defense counsel of the opportunity to reply to these arguments was prejudicial "sandbagging"). In this case, while the defendant was on the stand, he contradicted the testimony Detective Humphrey had given concerning statements the defendant made to him at the police station after his arrest. The defendant's testimony placed his credibility squarely before the jury. Since the notes contradicted the defendant's testimony, they clearly injured the defendant's credibility. If there had been full responses to discovery demands, the defendant might have availed himself of his constitutional right to remain silent. As the second circuit noted in a similar instance when the prosecution withheld a defendant's statement from him during discovery only to use it against him as rebuttal evidence, "[h]ad defense counsel known the contents of the statement, he might well have advised [the defendant] not to take the stand." *United States v. Padrone*, 2d Cir., 406 F.2d 560, 561 (1969).

A review of the record reveals that there was substantial evidence which would support a verdict finding that the defendant was guilty of the crimes for which he was convicted. However, when a discovery violation prejudices substantial rights of the defendant, his conviction must be reversed. *See, e.g., United States v. Lewis*, 511 F.2d at 803; *United States v. Padrone*, 406 F.2d at 561; *United States v. McElroy*, 697 F.2d at 463; *Ex Parte Lambert*, Ala.Supr., 519 So.2d 899, 900 (1987);

9. The State was under a duty to supply the substance of the oral statements (as reflected in the notes) without regard to its use or non-use of the notes at trial because the State intended to "offer evidence at the trial" of the statements which had been made by the defendant.

*State v. Miller,* W.Va.Supr., 363 S.E.2d 504, 512 (1987).

This Court cannot conclude that the violation of the clear provisions of Superior Court Criminal Rule 16(a) amounted to harmless error in this case. Therefore, defendant's convictions must be reversed and the case will be remanded to Superior Court for a new trial. On remand, the defense must be supplied with a copy of the notes before trial and the defendant's prior testimony related to his oral statements may not be used against him.

The conviction is REVERSED and the case is REMANDED for a new trial.