IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| REGINALD WATERS | § | |
| | § | |
| Defendant Below, | § | No. 491, 2019 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below – Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | ID. No. 1602019886A/B (N) |
| Appellee. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

Submitted: September 16, 2020
Decided: November 23, 2020

Before **VALIHURA**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Patrick J. Collins, Esquire, COLLINS & ASSOCIATES, Wilmington, Delaware; *Attorney for Appellant, Reginald Waters*.

Sean P. Lugg, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; *Attorney for Appellee, the State of Delaware*.

**MONTGOMERY-REEVES**, Justice:

The appellant, Reginald Waters, appeals his convictions for various offenses relating to the death of Clifton Thompson. According to Waters, the Superior Court erred in three ways. First, Waters contends that the Superior Court applied an incorrect legal standard when considering his motion for a new trial and improperly denied the motion. Second, Waters argues that the Superior Court erred in denying his motion to exclude certain prison phone calls that were obtained in violation of his Fourth Amendment rights. Third, Waters contends that the Superior Court erred by denying a continuance of his trial to allow his counsel time to review certain evidence, which compromised his right to a fair trial.

For the reasons set forth below, this Court holds that the Superior Court did not abuse its discretion by denying Waters' motion for a new trial. Nor did the court err in allowing the prison phone calls to be used at trial. Finally, the court did not abuse its discretion by denying Waters' continuance of trial. Thus, we AFFIRM the judgment of the Superior Court.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2016, Thompson and his girlfriend, Cassie Brown, along with their daughter, arrived at Jean Cameron's residence at Prides Court Apartments. The daughter walked towards Cameron's apartment, but returned to her parents complaining of a man lurking in the bushes wearing a hood. The family tried to enter

2

Cameron's residence, but the same man confronted them. The man instructed Thompson to send his family inside Cameron's residence.

Thompson and his daughter quickly entered Cameron's apartment. Thompson then called Rapha Moore and stated, "[Y]ou got this guy at my mom's house."[1] Meanwhile, Brown, who was accidentally locked outside, recognized the man as Waters and began asking him why he was looking for Thompson. During this conversation, Brown overheard Waters on the phone with Moore. Brown was eventually buzzed into Cameron's residence.

Moore, who had spoken with both Thompson and Waters, traveled to Prides Court Apartments to deescalate the situation.[2] Moore arrived as Thompson reappeared from Cameron's apartment with one hand in his pocket. While Moore was talking with Thompson, he noticed an individual wearing a black hood approach, and subsequently heard gunshots.[3]

New Castle County Police responded to reports of gunfire. Thompson was transported to Christiana Hospital and ultimately died from multiple gunshot wounds. During an on-scene investigation, Moore told police that Waters shot Thompson.[4] Moore also informed police that Thompson and Waters were in a

---

[1] App. to Opening Br. 427 (Hereinafter "A . . .").
[2] A496; 488-89.
[3] A491.
[4] A514.

dispute over money. In the course of investigation, police obtained Waters' Cell Site Location Information ("CSLI") for the period of January 28, 2016, through February 28, 2016. The State utilized this information, along with other evidence, to place Waters at the scene of the crime.

Waters was arrested on March 29, 2016, and subsequently indicted for Murder in the First Degree, Possession of a Firearm during the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and Possession of Ammunition by a Person Prohibited. Waters' trial was originally scheduled for September 2017 but was continued twice at Waters' request to May 2018.

The State subpoenaed Waters' prison phone calls in June and October 2017. On April 25, 2018, the State provided defense counsel with thirteen prison phone calls that the State planned to introduce at trial. These were provided pursuant to a protective order, which was lifted on May 9, 2018.[5] On that date, defense counsel filed a motion for a continuance of the trial to review all the prison calls in their entirety. The Superior Court denied the motion.[6]

A bench trial was held from May 14 to May 23, 2018. During the trial, defense counsel sought to exclude the prison calls, arguing that the State failed to show the reasonableness of the subpoena used to seize the prison calls. The State responded

---

[5] A12.
[6] *See* A362-72.

that Moore had begun to avoid the investigating detective. Thereafter, Moore signed an "Affidavit of Truth," averring that his original statement to the police implicating Waters was involuntary and was given under pressure.[7] Moore did not draft the document. Further, Waters was previously convicted of witness tampering. The Superior Court allowed the prison calls to be entered into evidence. After deliberation, the Superior Court returned a verdict of guilty as to Manslaughter, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and Possession of Ammunition by a Person Prohibited.[8]

On September 17, 2018, after the bench trial but before Waters was sentenced, defense counsel requested a continuance to determine whether to file a post-trial motion based on a newly issued opinion from the United States Supreme Court. The court granted the continuance. On December 17, 2018, defense counsel filed a motion for a new trial, arguing that the State's use of Waters' CSLI was unconstitutional. The Superior Court denied the motion for a new trial. The Superior Court held that Waters' CSLI was unlawfully obtained under *United States v. Carpenter*,[9] but Waters' guilt was established beyond a reasonable doubt despite the exclusion of the CSLI evidence.[10]

---

[7] A359.
[8] A717.
[9] 138 S.Ct. 2206 (2018).
[10] *State v. Waters*, 2019 WL 2486753, at *3-4 (Del. Super. June 13, 2019); A1149-54.

## II. STANDARD OF REVIEW

This Court reviews the grant or denial of a motion for a new trial or a continuance of trial for abuse of discretion.[11] "To the extent that we examine the trial judge's legal conclusions, we review the trial judge's determinations *de novo* for errors in formulating or applying legal precepts."[12] We also review alleged constitutional violations *de novo*.[13]

## III. ANALYSIS

### A. The Superior Court Did Not Abuse its Discretion In Denying Waters' Motion for New Trial.

The first question on appeal is whether the Superior Court erred in denying Water's motion for a new trial. Neither party has identified any Delaware authority that articulates the new-trial standard in a case with the unusual facts presented here—a bench trial and conviction, followed by a post-trial determination (before sentencing) that certain evidence should not have been admitted.

The Superior Court described the standard of review as follows:

> *Viewing the evidence in the light most favorable to the State*, a motion for new trial will not be granted "if there was some probative evidence upon which a verdict of guilty could reasonably be based." The court must refrain

---

[11] *Burroughs v. State*, 988 A.2d 445, 448-49 (Del. 2010); *Secrest v. State*, 679 A.2d 58, 64 (Del. 1996).
[12] *Lopez-Vasquez v. State*, 956 A.2d 1280, 1284-85 (Del. 2008).
[13] *Morris v. State*, 2019 WL 2123563, at *5 (Del. May 13, 2019).

from granting the motion unless the verdict "appears to be against the great weight of evidence."[14]

Waters contends that the court utilized an erroneous standard of review. Specifically, Waters argues that this standard improperly places the burden on the defendant by viewing the evidence in the light most favorable to the State. He further argues that the Superior Court erred in holding that a court must refrain from granting the motion unless the verdict "appears to be against the weight of evidence."

We agree with Waters. Under Rule 33 of the Superior Court Rules of Criminal Procedure, "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Where, as here, trial was by the court without a jury and the motion is based on a meritorious claim that the court considered evidence that is later determined to have been inadmissible, the court must determine whether the consideration of that evidence was prejudicial in that it affected the court's verdict.[15] Should the court determine that it would not have convicted the defendant but for the inadmissible evidence, the interests of justice require the court to vacate the defendant's conviction and enter of a judgment of acquittal. If, on the other hand, the court concludes that consideration of the evidence was inconsequential—that is, it did not affect the court's finding of the

---

[14] *Waters*, 2019 WL 2486753, at *2 (quoting *State v. Rebarchak*, 2002 WL 1587855, at *1 (Del. Super. June 20, 2002)).

[15] *See United States v. Rosario*, 2013 WL 4078354, at *3 (S.D.N.Y. Aug. 5, 2013) (quoting *United States v. Stewart*, 433 F.3d 273, 297 (2nd Cir. 2006)).

defendant's guilt beyond a reasonable doubt—the court may exercise its discretion and deny the motion.[16]

Although the Superior Court misstated the standard of review, it ultimately applied the correct standard in its analysis. The court reexamined the evidence, with the burden on the State, and determined that Waters was guilty beyond a reasonable doubt without the improper CSLI evidence. First, the Superior Court correctly held that the search of Waters' historical CSLI was unconstitutional under *Carpenter* because the pen register order did not include a finding of the requisite probable cause. Next, the Superior Court examined the remaining evidence on record and concluded that the CSLI evidence was "cumulative" and that "assessing the evidence presented, the credibility of witness testimony, and the inferences drawn from the direct evidence, *[Waters'] guilt was established beyond a reasonable doubt even without considering the CSLI evidence . . . [or the inferences possibly drawn from it]*."[17] Thus, the Superior Court conducted the requisite review and did not err in denying Waters' motion for a new trial.

---

[16] *See United States v. Grossi*, 143 F.3d 348, 349 (7th Cir. 1998) (distinguishing the nature of the court's inquiry when motion is made following a jury trial from the inquiry that follows a bench trial.).

[17] *Waters*, 2019 WL 2486753, at *3 (emphasis added).

**B. The Superior Court Did Not Err In Denying Waters' Motion To Exclude His Prison Phone Calls**

The second issue on appeal is whether the Superior Court erred in denying Waters' motion to exclude the prison phone calls because the Attorney General's subpoena violated the Fourth Amendment.

The Fourth Amendment of the United States Constitution protects individuals from "unreasonable searches and seizures."[18] Generally, the Fourth Amendment requires probable cause before a warrant to conduct a search may be issued. However, "prisoners who are notified by prison officials that their communications will be monitored have no expectation of privacy in the mail they send or the telephone calls they make" under the Fourth Amendment.[19] As such, "the seizure of documents or other prison communications by subpoena must be 'reasonable' for Fourth Amendment purposes."[20] A subpoena for prison communications is reasonable if it meets the requirements outlined by the United States Supreme Court in *Procunier v. Martinez*.[21] The *Martinez* standard requires courts to determine whether "(1) the contested actions furthered an important or substantial

---

[18] U.S. Const. amend. IV; Del. C. Ann. Const. art. 1 § 6.

[19] *Johnson v. State*, 53 A.3d 302, 2012 WL 3893524, at *1 (Del. 2012) (citing *Rowan v. State*, 45 A.3d 149, 2012 WL 1795829, at *2 (Del. 2012); *Johnson v. State*, 983 A.2d 904, 919 (Del. 2009)); *see also Rowan*, 2012 WL 1795829, at *2 ("[A] defendant in pretrial detention has no reasonable expectation of privacy in his outgoing, nonprivileged mail, where the defendant is on notice that his incoming mail will be inspected." (citing *Johnson*, 983 A.2d at 919)).

[20] *Whitehurst v. State*, 83 A.3d 362, 367 (Del. 2013) (citing *Johnson*, 983 A.2d at 917).

[21] *Id*.

9

governmental interest . . . , and (2) the contested actions were no greater than necessary for the protection of that interest."[22]

Waters admits that he knew his calls were recorded[23] and agrees that the State need only show that the Attorney General's subpoena was reasonable under the *Martinez* standard for Fourth Amendment purposes. However, Waters argues that the State lacked a substantial governmental interest in obtaining the prison phone records.

The State has identified potential witness tampering as the applicable governmental interest. This Court has recognized "that there is a legitimate or substantial government interest if the defendant is engaged in witness tampering."[24] "This governmental interest falls within the category of security concerns that the inmate is engaged in 'ongoing criminal activity.'"[25] For example, in *Whitehurst*, the State learned of possible witness tampering by an incarcerated defendant through his significant other.[26] This Court held that the State satisfied the first prong of *Martinez*:

> An on-going investigation in one crime and the investigation of a potential subsequent crime, witness tampering, fall within the important government interest

---

[22] *Procunier v. Martinez*, 416 U.S. 396, 423 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989).
[23] A367.
[24] *Whitehurst*, 83 A.3d at 367.
[25] *Johnson*, 983 A.2d at 917.
[26] 83 A.3d at 367.

10

of investigating and preventing criminal activity. Even if the tip comes from an uncorroborated source, the State has an interest in investigating criminal activity. Thus, the investigation of Whitehurst's prison activity th[r]ough the issuance of a subpoena to obtain his phone recordings furthered a substantial government interest.[27]

Waters attempts to distinguish this case and others by arguing that a person actually reported the alleged witness tampering in each of these cases, and no one reported the witness tampering here. But these cases do not establish any such prerequisite for showing a substantial governmental interest relating to witness tampering. Here, the record supports the Superior Court's denial of Waters' motion to exclude the prison phone calls. Moore's sudden uncooperative behavior, Moore's signed affidavit that was not drafted by him, and Waters' previous conviction of witness tampering were sufficient to establish that a significant governmental interest was at stake. As such, the Superior Court did not err in finding the State's subpoena reasonable.

### C. The Superior Court Did Not Abuse its Discretion In Denying Waters' Motion To Continue His Trial

The third and final question on appeal is whether the Superior Court erred in denying Waters' motion to continue his trial in order to provide his counsel with additional time to review all the prison calls in their entirety.

---

[27] *Id*. at 367-68.

Rule 16(a)(1)(A) of the Superior Court Rules of Criminal Procedure enumerates the State's discovery obligations.

> *Upon request of a defendant* the state shall *disclose to the defendant and make available for inspection*, copying, or photographing: any relevant written or recorded statements made by the defendant or a codefendant (whether or not charged as a principal, accomplice or accessory in the same or in a separate proceeding), or copies thereof, *within the possession, custody, or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney general*; that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a state agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged. . . .[28]

This Rule imposes a duty to look for discoverable evidence and a continuing duty to disclose the existence of such evidence.[29] This Court has expressly mandated that Rule 16 requirements are interpreted broadly.[30] If the State fails to comply with these requirements, a conviction will be set aside if the violation prejudiced the defendant.[31]

Waters contends that the State compromised his right to a fair trial by not providing defense counsel with all of his prison phone calls. Waters cites numerous

---

[28] Super. Ct. Crim. R. 16(a)(1)(A) (emphasis added).
[29] *Skinner v. State*, 575 A.2d 1108, 1126 (Del. 1990); Super. Ct. Crim. R. 16(c).
[30] *Secrest*, 679 A.2d at 64 (citing *Ray v. State*, 587 A.2d 439, 441 (Del. 1991)).
[31] *Johnson v. State*, 550 A.2d 903, 909-14 (Del. 1988).

cases where Delaware courts have held that the State violated a defendant's right to fair trial by surprising defense with the existence of prison phone calls either on the eve of or during trial.[32]  Unlike the cases cited, however, defense counsel was not surprised by the existence of Waters' prison phone calls.

On April 25, 2018, three weeks before trial, the State provided Waters with thirteen recordings of the calls it intended to introduce at trial.   At that time, counsel for Waters had a conversation with one of the trial prosecutors and stated that he did not need all of the calls because the State had an obligation to provide *Brady* material in the calls, if any existed.  Trial counsel has since stated that he may have made a mistake by delegating review of the other calls to the State.[33]  These statements evidence the knowledge of the existence of these phone calls, the ability to request these calls, and the strategic choice to delegate review of these calls to the State. Furthermore, the State, at the request of the Superior Court, conducted additional searches and supplied additional phone calls and transcripts to Waters.   Thus, the Superior Court did not abuse it discretion by denying Waters' motion for a continuance.

## IV.   CONCLUSION

Based on the foregoing, the Superior Court's judgment is AFFIRMED.

---

[32] *See State v. Hill*, 2011 WL 2083949 (Del. Super. Apr. 21, 2011); *see also Johnson*, 550 A.2d at 909-14.
[33] A364.

13